Fuchsberg, J.
The issue before us is whether a police search of a restaurant and the seizure, during that search, of eight guns violated either the State or the Federal Constitutions (NY Const, art I, § 12; US Const, 4th Arndt) because both the search and the seizure were conducted without a warrant. For the reasons which follow, we decide that there was here no constitutional violation, and that the judgment of conviction should be upheld.
Defendant was tried by jury. He was convicted of the crimes of criminal possession of stolen property in the second degree, possession of a weapon, and, lastly, bribery and obstructing governmental administration. Earlier, after holding a full hearing on defendant’s motion to suppress the seized evidence, the trial court ruled it admissible.
Before discussing the propriety of the warrantless nature of the search, we turn to the question of whether there was " 'reasonable suspicion’ of criminal activity ris[ing] to the level of probable cause” (Sibron v New York, 392 US 40, 61, n 20). For without probable cause there can be no search, even with a warrant, it being indeed the function of a warrant to certify that there is such cause (CPL 690.40, subd 2; People v Singleteary, 35 NY2d 528, 533).
On July 26, 1971, Detectives Bill Missailidis and Mathew Rosenthal of the New York City Police Department were advised by two separate informers that the Pizza Box, a restaurant on Bleecker Street in lower Manhattan was "the place to go in New York City to buy illegal weapons” and that the main distributor there was a man named "Sal” (later to be identified as the defendant, Salvatore Vaccaro). One of the informers, Michael Andreyev, whose name was later disclosed at trial when he was called as a witness for the People, also *471 advised the detectives that he personally had purchased a revolver from "Sal” at the Pizza Box. Though it does not appear that either Missailidis or Rosenthal had previously received information from either informer, another detective had told them that in the past these men had provided him with information which turned out to be reliable and led to a conviction.
Nevertheless, though either hearsay or direct knowledge of an informer’s prior performance may support a finding that he is reliable (People v Hanlon, 36 NY2d 549, 557), Detective Missailidis did not rest upon that alone. He proceeded to check out Andreyev’s story directly. He did so by watching Andreyev dial the Pizza Box’s telephone number, which the detective had learned, and then, using an extension telephone, listened in on the informer’s ensuing telephone conversation with the defendant. At that time he overheard them discuss Andreyev’s pretended desire to purchase five guns, and defendant’s willingness to provide them out of his next shipment, suggesting that Andreyev keep "in touch” with him in order to ascertain when the guns would be on hand. The overhearing of this conversation may be taken as verification of the informers’ reliability (People v Hanlon, 36 NY2d 549, 558, supra).
In fact, almost two months went by before Andreyev learned that defendant had received a shipment. That was on September 20, 1971. However, though he tried to do so on that very day, he did not succeed in reporting it to the detectives until the following day, when it precipitated the search and seizure. In the intervening two months, no search had been attempted, either with or without a warrant. Therefore, since it is as of the time of the search that probable cause must exist (see People v Marshall, 13 NY2d 28, 35; United States v Rubin, 474 F2d 262, 268), it is not necessary for us to determine, in the face of the conversations of July 26 and the uncertainty as to the time when any shipment might arrive, whether probable cause existed before September 20 (cf. United States ex rel. Cubicutti v Vincent, 383 F Supp 662, 666 [Gurfein, J.]). It suffices for our purposes that it clearly did exist on September 20 and 21, the connection between the events of July and September making the former supportive of a finding of probable cause on the latter occasion despite the passage of time.
We turn then to the particular facts on which the People *472 base their assertion that they were justified in acting without a warrant. Though there is a strong judicial preference for search warrants (see Katz v United States, 389 US 347, 357; People v Gonzalez, 39 NY2d 122, 127; People v Hanlon, 36 NY2d 549, 558 supra), several "exceptional circumstances” have been recognized "in which, on balancing the need for effective law enforcement against the right of privacy, it may be contended that a magistrate’s warrant for search may be dispensed with”. (Johnson v United States, 333 US 10, 14-15; see, also, People v Mitchell, 39 NY2d 173; People v Taggart, 20 NY2d 335; People v Gallmon, 19 NY2d 389.) One of these "exceptional circumstances”, the one relied on in the case before us, arises when an exigency has made time of the essence because "evidence or contraband [is] threatened with removal or destruction”. (Chapman v United States, 365 US 610, 615.)
In the present case, when, on September 20, Andreyev attempted to communicate with Detective Missailidis by telephone, it was, as he later testified at trial, because at 9:00 p.m. that evening his fellow informer had seen "25 or 30 guns” at the Pizza Box. However, since the detective was not on duty that night and was therefore unavailable to receive the call, the informer merely left a message that it was "urgent” that he talk with him. As it turned out, that message was not received until approximately 4:00 p.m. on the following day, which was when the detective was due to report back to his office. He then returned the call promptly, and, upon learning of the informer’s observations of September 20 at the Pizza Box, as well as the fact that on a subsequent visit during the intervening time two thirds of the guns appeared to be gone, he arranged, in the company of Detective Rosenthal and other officers, to meet with both informers. By about 5:15 p.m., their meeting was already in process.
The informer who had made the reported observations then directly repeated to the detectives that, on his revisit to the Pizza Box, he had observed the diminution of the number of guns. In short, the information was no longer only that guns were there, but that they were disappearing rapidly. Andreyev, who it appears had visited the premises that day too also indicated that, of those remaining, one gun was on a shelf of a counter on the street floor of the restaurant and the rest were in a brown bag on its basement level. When the officers estimated it would take them two hours to obtain a search *473 warrant, one of the informers further opined that the guns would be gone by then because, after showing him the guns, "Sal” had appeared apprehensive when the "deal didn’t go down right away”. The police thereupon decided to enter the restaurant and make the search at once.
When they did so, the guns were found precisely where Andreyev had said they would be. Obviously, in looking for them at the specified locations, the officers were focusing on "predetermined targets” (People v Clements and Metzger, 37 NY2d 675, 679, cert den 425 US 911).
On this proof it cannot be said as a matter of law that time was not of the essence. Nor do we see any reason to disturb the trial court’s finding that it was not unreasonable for the police not to have delayed their search until it could have been effected with a warrant (see, e.g., United States v Rubin, 474 F2d 262, supra; United States v Brown, 457 F2d 731, cert den 409 US 843; United States v Davis, 461 F2d 1026).
True, had Missailidis been available to receive the informer’s telephone call the night before, especially since there was then no indication that the guns were to be dispersed with such speed, there would appear to have been ample time to obtain a warrant. But the fact is that he was not there and did not receive the message. And the actual exigency, once it had arisen, was not diminished by his failure to have arranged for the immediate communication to himself or to another officer of any message that might come in on this then two-month-old case. Desirable as it may have been to employ more painstaking procedures, there is not the slightest indication that any delay caused by the failure of transmission of the original message was willful. (Cf. United States v Marshall, 488 F2d 1169; United States v Wilcox, 357 F Supp 514.) Any such lack of foresight, even if it be thought to have unintentionally contributed to the creation of an emergency, made the urgency no less a reality on the late afternoon of the day of the search.
Nor can the police be faulted for not using the time between approximately 4:00 p.m., when Andreyev and Missailidis finally spoke to one another, and 5:45 p.m., when the restaurant was entered, to obtain a warrant. In the face of an affirmed finding of fact in a case involving dangerous firearms, it would be cutting things entirely too thinly to engage in judicial second guessing of the use of such a relatively short interval of time as the hour between soon after four and about *474 5:15 p.m. to arrange the confirmatory face-to-face meeting with the informers, to assemble the search crew and to plan the search itself. These were not just matters of convenience to the officers (cf. Chapman v United States, 365 US 610, 615). Indeed, the circumstances may be considered to have been sufficiently exigent during that entire hour and three quarters, and the unecessary delay, if any there was, would have served only to jeopardize the success of the search and not to suspend the exigency. Thus it was not unreasonable to regard them as exigent at 5:45 p.m. simply because the equally exigent circumstances that existed shortly after 4:00 p.m. had not yet eventuated. The reasonableness is to be tested by the threat the circumstances posed at each time and not by subsequent hindsight.
We note briefly defendant’s argument directed to the nondisclosure of the informers’ names. The issue was not preserved for our review since a demand for their names was not made (CPL 470.05; cf. People v Levya, 38 NY2d 160, 172; People v Robinson, 36 NY2d 224). Moreover, Andreyev, as indicated, testified without objection and was fully cross-examined, and the other informer’s testimony would not have entered into the determination of guilt or innocence (People v Pena, 37 NY2d 642; People v Goggins, 34 NY2d 163, cert den 419 US 1012).
Accordingly, the order of the Appellate Division affirming the judgment of conviction should, in turn, be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur.
Order affirmed.