OPINION OF THE COURT
Jones, J.
 The evidence in the record supports the conclusion reached by the courts below that, after the arrest of two of the four defendants for having hijacked a truck from which they stole cartons of watches, the police had probable cause to search a different white Econoline Ford truck as it stood in a garage on Alabama Avenue in Brooklyn, and that the high probability that the stolen merchandise would then be moved on without delay constituted such exigent circumstances as to justify the warrantless search and the consequent seizure of the stolen watches.
In late March, 1974 detectives attached to the Safe, Loft and Truck Squad of the New York City Police Department, a highly specialized police unit with considerable experience *630 and expertise in the investigation of hijackings, commenced surveillance of defendant Ciaccio prompted by his prior association with known members of organized crime. In effectuation of that continuing surveillance, on April 19, 1974 Detectives Hernandez and Lalena tailed defendants Ciaccio, Velez and Cerverizzo from a truck repair garage located at 84 Alabama Avenue in Brooklyn to the vicinity of Kennedy Airport where they were joined by defendant De Sousa. No criminal activity was observed on that occasion.
One week later, on April 25, 1974, Detectives Hernandez and McLaughlin staked out a surveillance at the 84 Alabama Avenue garage at about 10:30 a.m. At 11:00 a.m. they observed all four defendants leave that garage in two cars. Velez and Ciaccio left in a white Pontiac Bonneville, license plate number 905-289; Cerverizzo and De Sousa departed in a tan Chevrolet, license plate number 619 KDH. The detectives followed and were shortly joined by other members of the Safe, Loft and Truck Squad. The officers continued to tail defendants until eventually, at about 12:15 p.m., they lost them.
At 12:35 p.m. James Guirza, a driver for Graf-Air Associates Air Freight Company, while transporting merchandise which he had picked up at Kennedy Airport in his green Ford Econoline van, was forced off the road by a white Pontiac Bonneville. Another car pulled up behind the van. A white male wearing a dark ski mask and brandishing a revolver ordered Guirza into the back seat of the Pontiac. He was then driven around for a period of about 25 minutes and was eventually released unharmed, minus, of course, his van and its cargo. At the time of his release he was able to ascertain the license plate numbers of the white Pontiac: 905-289. He then ran down the block and immediately reported the incident to the police over the telephone.
After losing defendants the two police cars had commenced their return to Brooklyn by different routes. During this return Detective Hernandez, while riding in the car operated by detective Butler, spotted the white Pontiac proceeding in the opposite direction on the Interboro Parkway. The detectives turned around and began following the Pontiac. Shortly thereafter they observed the Pontiac pull up to an intersection and discharge a passenger (later discovered to be James Guirza) who ran down the block. Based on their prior experience with hijacking operations, the detectives knew that this *631 passenger was the victim of a truck hijacking. Consequently, the detectives followed the Pontiac for a short distance to a garden apartment complex, where, after a brief struggle, they placed defendants Velez and Ciaccio under arrest.
After unsuccessfully attempting to re-establish contact with defendants, the second police car, containing Sergeant Cunningham and Detectives Lalena and Jacob, returned to the origin of the day’s surveillance, the garage at 84 Alabama Avenue, reaching there about 1:00 p.m. The officers were aware that this garage had been previously used as a "drop” for hijacked merchandise. On arriving Sergeant Cunningham phoned his office while the other detectives watched the garage. Cunningham was then informed that Detective Hernandez had reported that a green truck bearing license plate number 4169 HJ and containing, among other things, cartons of Helbros watches had been hijacked. He was further told that the hijacking victim had been released and that defendants Velez and Ciaccio were in police custody. After completing this telephone conversation Cunningham was then informed by Lalena and Jacob, who had been watching the garage, that at about 1:10 p.m. they had seen a green truck operated by defendant De Sousa with license plate number 4169 HJ arrive at the garage together with the tan Chevrolet that they had been following earlier in the day, operated by defendant Cerverizzo. Cerverizzo parked the Chevrolet on the street, got out of the vehicle and thereafter went into the garage. Subsequently a stranger (who later proved to be Robert Cerverizzo, defendant John Cerverizzo’s brother, but who was not so identified at the time) and another man came out of the building and moved a tractor which had been blocking the entrance to the garage. The stranger then directed the green truck into the garage. After perhaps a 10-minute interval the green truck was driven out of the garage with defendant Cerverizzo at the wheel, followed by a red and white Buick automobile operated by defendant De Sousa.
At this point Sergeant Cunningham and Detectives Lalena and Jacob left their observation post and approached the garage. Detective Jacob remained outside but Officers Cunningham and Lalena entered the garage through the wide-open doors. They observed several mechanics in the rear work area in the garage. The stranger who had guided the movements of the green truck was standing in the center of the garage near a white Ford Econoline truck. Detective Lalena *632 walked up to this man and indicated that he wanted to get his car repaired and inquired as to who was in charge. The stranger responded that he was in charge and Lalena then asked him several questions concerning the ownership of the white truck. Thereafter Lalena and Cunningham displayed their shields and walked over to the white truck. Lalena, peering in the window, spotted several cartons. He opened the truck door and found that the cartons bore labels of "Helbros Watches”. Cunningham verified this observation and the stranger was promptly arrested for possession of stolen property and the cartons of watches were seized.
While they were still in the garage, the detectives observed the red and white Buick previously operated by defendant De Sousa pass slowly across the opening of the garage door. The officers ran out to the street and, with weapons drawn, surrounded the Buick, ordered defendant De Sousa and his passenger, defendant Cerverizzo, out of the car and placed them under arrest. While these defendants were standing by the open passenger door of the car, Sergeant Cunningham ordered Detective Lalena to search the car. Lalena thereupon reached into the car and removed from the front seat a pair of brown work gloves and some papers which proved to be air freight bills.
At trial* defendants moved to suppress both the cartons of watches seized from the white Econoline truck and the gloves and air freight bills taken from the front seat of the Buick. Hearings on both motions were conducted outside the presence of the jury, at the conclusion of which the trial court denied the motions, finding that there was probable cause for both searches and concluding that the warrantless search of the white truck in the garage at 84 Alabama Avenue was justified by exigent circumstances and that the warrantless search of the Buick was lawful as incident to the arrest of defendants De Sousa and Cerverizzo. The defendants were convicted of grand larceny, and their convictions were affirmed by the Appellate Division, without opinion. We now affirm the order of the Appellate Division.
Defendants urge that the seizure of the cartons from the white truck violated their rights under Federal and State Constitutions to be secure against unreasonable searches and seizures. We reject this contention as have the courts below.
*633 Our analysis proceeds in two stages. First it must be determined whether the police officers had probable cause to search. The evidence offered on the suppression motion disclosed that the searching officers had been engaged in a continuing, active investigation of defendants’ suspected hijacking activities. They knew that a particular truck had been hijacked, and they had a description and the license number of the truck in question. Two of the four associated defendants had already been arrested for that hijacking. The truck which had been hijacked and one of the hijackers’ automobiles were positively identified at the garage on Alabama Avenue. Professional truck hijacking, by its very nature, calls for immediate disposal of the motor vehicle that has been hijacked and prompt action to place the stolen merchandise beyond the reach of police recovery. It would obviously be unreasonably hazardous to continue to operate the loaded vehicle, or to transfer its contents to another vehicle, on public streets when commission of the crime and complete identification of the hijacked truck were inevitably soon to be known to the authorities. In this instance Sergeant Cunningham and Detectives Lalena and Jacob knew of the hijacking, of the identity of the truck which had been hijacked, and that two of the perpetrators had been apprehended. Their own observations confirmed that the, hijacked truck had been driven into the Alabama Avenue garage, had remained there for a brief interval and then had been driven away, uncamouflaged, bearing the same license plates and with its external appearance unchanged. There were but two alternatives; either the stolen watches were still in the green truck when it was driven out of the garage, or they had been off-loaded in the garage. If the stolen merchandise was still in the green truck there was no ready explanation for the brief garage stop. On the other hand it was known to the officers that the Alabama Avenue garage had previously been used as a "drop” for hijacked goods. The probabilities were high that the purpose of the 10-minute stop in the protective shelter of the garage was to remove the watches prior to driving the green truck away to be abandoned. The record amply supports the conclusion that the officers had probable cause to believe that the watches were in the garage.
Proof of probable cause, however, is not sufficient; the second, critical question is whether, acknowledging that there was probable cause, there was additional justification to *634 search and then to seize without having first obtained a warrant. (People v Vaccaro, 39 NY2d 468, 471-472.) We find the requisite justification in this record; there were exigent circumstances sufficient to justify the immediate search of the white Econoline truck as it stood in the garage on Alabama Avenue. If the watches had been unloaded in the garage, the nature of the premises and the presence of other motor vehicles made prompt movement of the stolen goods on to another location highly likely. (Cf. People v Farenga, 42 NY2d 1092, 1093.) There was no proof to suggest that the garage itself, with customers coming in and out, might be used as a storage warehouse, or even had facilities for such use. The great probability that the stolen watches were not in the green truck when it was driven away and that they would not remain in the garage but would almost immediately be transported by a readily available vehicle to another location for hiding or other possible disposition constituted sufficiently exigent circumstances to justify the immediate search of the garage. Although De Sousa and Cerverizzo had left the garage with the green truck, the two men who had assisted in bringing the green truck into the garage had not left. Indeed it may be suggested that the police would have been subject to severe criticism had they not moved in immediately. Nor was the manner in which the officers entered on their search unduly intrusive or otherwise calculated to result in a breach of the peace. The constitutional proscriptions did not require in these circumstances that application be made for a search warrant while the garage and all vehicles exiting from that garage be kept under continuing protective surveillance. The evidence in the record sustains the finding of the trial court, affirmed at the Appellate Division, that ”[f]rom their experience and ’streetwide’ knowledge these officers rightly concluded that if immediate police action was not taken, the fruits of the crime would be quickly removed or otherwise disappear”.
We have examined defendants’ other contentions and find them to be without merit. It is not disputed that the police had probable cause to arrest De Sousa and Cerverizzo, and there is support in the record for the finding, affirmed at the Appellate Division, that the seizure of the work gloves and air freight bills from the front seat of the Buick was permissible as incident to that arrest. We add that, while certain of the prosecutor’s statements on summation would better have been *635 left unsaid, they did not constitute reversible error, considered singly or in combination.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.

 This was defendants’ second trial. Their first had ended in a mistrial when the jury was unable to reach agreement.