OPINION OF THE COURT
Sheldon S. Levy, J.
When police officers execute a valid search warrant at premises alleged to be a crime scene or the repository of stolen goods or instrumentalities of a crime, can the victim properly be present to make an on-the-spot confirmation of *635 items being seized under the warrant? If so, can the officers also confiscate objects which are not enumerated in the warrant, but which are then and there identified by the victim as his property or as having been criminally employed against him? These questions have not been addressed previously in this State.
An additional issue, also of first impression, is whether the police, seeking to assist a robbery victim who has been stripped of most of his clothing, may undertake a warrant-less search of a crime scene apartment to attempt to recover these garments? This question presents an interesting variation on the emergency exception to the warrant requirements.
Defendants Diane Boyd and Veronica Bishop were indicted for robbery in the first degree and assault in the second degree. They are charged with using dangerous instruments, forcibly to steal property from one John Dillabough and intentionally to cause physical injury to him.
The pertinent facts are simply stated. On April 12,1983, at about 1:30 a.m., in response to a radio run, Police Officer Dennis Finnerty drove to the La Fiesta Bar on West 46th Street near Eighth Avenue, Manhattan. There he met with complainant Dillabough, a troubled adolescent from out-of-State, who was then clothed only in his underwear and was covered by a blanket provided by an emergency ambulance crew. Dillabough averred that he had been assaulted and robbed by a man and two women about an hour earlier, and he directed Officer Finnerty to an apartment in a nearby residence where the incident had allegedly occurred. After Dillabough identified as his assailants two women who had been arguing in the doorway of the said apartment, Finnerty arrested the defendants.
The officer then searched the apartment for the third alleged perpetrator, but found no one. Next, at defendants’ request, Finnerty went back inside the apartment to bring them their coats. Finally, the officer, accompanied by Dillabough, re-entered the apartment and, after a brief search, permitted Dillabough to put on a pair of dungarees and a shirt, which Dillabough stated belonged to him.
*636 After securing the premises, Finnerty applied for, and was issued, a warrant to search the subject apartment. The warrant authorized, inter alia, the seizure of a wooden club, a monkey wrench and a partially burnt candle — objects Dillabough claimed had been employed against him in a bodily assault — as well as a variety of specifically stated clothing, a $20 bill, a $5 bill, and personal identification papers — property Dillabough asserted had been stolen from him. At 5:25 p.m., on April 12, Finnerty and several other officers went to the apartment to execute the warrant. Dillabough accompanied them, even though the warrant provided no explicit authorization for his presence.
During the search that ensued, at various times, when an officer uncovered an object that he believed was listed in the warrant, he sought corroboration from Dillabough. After one and a half hours, the police had found almost every item named in the warrant. Meanwhile, although Dillabough did not physically participate in any actual search, he did observe his pocket comb lying on a dresser. When he alerted Finnerty to this, the officer confiscated the comb, which was not an item listed in the warrant. Similarly, while Finnerty was searching through a small wooden box in a bedroom, he seized a piece of paper with identifiable phone numbers written on it when Dillabough stated that the paper belonged to him. The paper, like the comb, was not named in the warrant.
Defendants now move, pretrial, to suppress all of the confiscated items. They argue that the entry to recover some of Dillabough’s clothing was an improper, warrant-less search and seizure, and that the final search, although authorized by warrant, was invalidated by Dillabough’s presence and participation. Contrariwise, the People contend that the clothes search was justified by emergency circumstances; that the execution of the warrant was proper in all respects; and that the items not listed in the warrant are admissible under the plain view exception to the warrant requirements.
The issues raised by the separate searches will be discussed in inverse order.
*637 PARTICIPATION BY A CRIME VICTIM IN A WARRANT-AUTHORIZED SEARCH
The Fourth Amendment mandate — that search warrants must describe with particularity objects to be seized — ensures that even those searches deemed necessary and judicially buttressed by a probable cause finding will be as limited as possible.
Using a warrant merely as a license to gain admission to private premises, and ignoring its dictates once inside, could readily result in a search as improper as one in which no warrant had been obtained at all. Defendants argue, therefore, that the participation of a crime victim transforms a warrant-authorized search into a general, illegal exploration because the police, instead of being guided by the warrant, seize those objects that are selected by the victim. That type of procedure, however, was not employed here.
No word or action on Dillabough’s part induced the police to extend the hunt beyond the area or the scope authorized by the issuing magistrate. Although a thorough and exhaustive search of the apartment did occur, it was the warrant itself that permitted the police to examine all of the nooks and crannies where they might legitimately expect even small items, such as identification papers, to be concealed.
Nor did Dillabough’s presence serve as an impermissible substitute for the warrant’s requirement of particularity. The descriptions of the items listed in the warrant clearly passed constitutional muster since they were sufficiently definite to enable the police to identify the articles with a reasonable degree of accuracy (People v Nieves, 36 NY2d 396; People v Burke, 53 AD2d 802). Only after the officers uncovered objects that they judged to be listed in the warrant did they turn to Dillabough to seek definitive confirmation. His responses made it even more positive that the items seized were the ones enumerated in the warrant. Surely, it is incongruous for defendants to complain that the police confiscated particular items after achieving a higher level of certainty than that mandated by the Fourth Amendment!
*638 Moreover, just as an immediate, on-the-scene showup proceeding “is consistent with good police work, insures accuracy and protects innocent suspects” (People v Barrett, 51 AD2d 840, 841; see, also, People v Brnja, 50 NY2d 366, 372; People v Smith, 38 NY2d 882, 883; People v Blake, 35 NY2d 331, 336-337), so, too, having a knowledgeable person present at the execution of a search warrant, which contains multiple items, for immediate confirmatory viewing of seized property is an equal demonstration of police efficiency, exactitude and protection forthwith against an erroneous confiscation of objects which may appear similar to those listed on the warrant. In essence, the presence of the corroboration witness provides a fair method for augmented assurance that the warrant will not be executed with excess.
It is clear, then, that Dillabough’s action in providing precise identification information constituted no greater intrusion on defendants’ privacy than that which had already been authorized by the issuance of the warrant. Under such circumstances, his assistance violated no constitutional protections or principles.
Indeed, the courts of the five sister States that have had occasion to consider the issue of civilian assistance in search warrant situations have all ruled that the police need not forego the type of aid provided by Dillabough (State v Klosterman, 317 NW2d 796 [ND]; State v McColgan, 631 SW2d 151 [Tenn Cr App]; People v Superior Ct., 25 Cal 3d 67; Commonwealth v Farrar, 271 Pa Super Ct 434; State v Scigliano, 120 Ariz 6). Federal courts have reached the same conclusion (see United States v Wright, 667 F2d 793; United States v Clouston, 623 F2d 485). In fact, Federal law enforcement officers are specifically authorized by statute (US Code, tit 18, § 3105) to solicit the aid of other persons when they execute warrants.
In this regard, however, it should be noted that the former law of this State (Code Crim Pro, § 798), also expressly permitted police to receive such assistance, but its present replacement statute (CPL 690.25) does not. Nevertheless, because the statute was modified solely to clarify the authority of police to execute warrants in geographical areas other than the county of issuance, the *639 change in language cannot be held to signify a policy decision to prohibit civilian participation (Proposed NY Crim Pro Law, CPL 365.25, Staff Comment). Thus, the fact that New York’s present statute fails to provide explicitly for civilian assistance — like those of the other States whose courts have had occasion to pass upon the issues here involved — is not material to a resolution of such Fourth Amendment concerns.
It must also be stressed, however, that, in permitting private individuals to assist the police, this court is not advocating victim self-help or vigilantism (see State v Klosterman, supra; State v McColgan, supra). Rather, civilians who act at the behest of the State are treated as police agents, subject to the same controls and restrictions of the Fourth Amendment as the police themselves (People v Esposito, 37 NY2d 156, 160; People v Luciani, 120 Misc 2d 826).
Once Dillabough is considered an agent of the police, it is clear that the comb and piece of paper — items identified by him, but not listed in the warrant — are admissible only if they fall within the plain view exception to the warrant requirements set forth by the Supreme Court of the United States in Coolidge v New Hampshire (403 US 443, 468). Although our Court of Appeals in People v Baker (23 NY2d 307, 319-321), a pre-Coolidge case, refused initially to recognize the plain view doctrine, subsequent cases make clear that New York now follows Coolidge (People v Di Stefano, 38 NY2d 640, 648; People v Neulist, 43 AD2d 150; People v Martinelli, 117 Misc 2d 310, 315; People v Barber, 113 Misc 2d 365, 369).
Under Coolidge (supra), in order to introduce evidence found in plain view, the People must satisfy several conditions, namely, the person who discovers the object must have a right to be where the object is found; the incriminating character of the object must be immediately apparent; and the finding of the nonspecified object must be inadvertent. In this case, there can be no doubt that these requirements were fully met.
For the reasons already detailed, Dillabough was a legitimate member of the search party. Moreover, it is obvious that, as the owner of the allegedly stolen property, he was *640 aware of its incriminating nature. Furthermore, there is no evidence to indicate that the discovery of the comb by Dillabough and of the paper by an officer was anything but happenstance.
Defendants, however, press the contention that the inadvertence requirement has not been met because Dillabough, knowing that the comb and paper had been taken from him, should have expected to find such items in the apartment and cannot be excused from failing to include them in the list presented to the court for a determination of probable cause. The argument is, however, without merit. As a matter of law, logic and practicality, the fact that a crime victim does not recall at the time of the promulgation of the request for a search warrant each and every item of property stolen, should not be a bar to the seizure of such items when they are legitimately spotted in plain sight and are properly identified (see United States v Davis, 542 F2d 743; State v Hubbard, 215 Kan 42).
In addition, Coolidge (supra) itself reveals that the inadvertence requirement does not apply to stolen goods or contraband (Coolidge v New Hampshire, supra, at p 471). Following Coolidge, a number of lower Federal courts have also dispensed with the condition that such items be inadvertently found (United States v Cutts, 535 F2d 1083,1084; United States v Zaicek, 519 F2d 412, 415; United States v Smollar, 357 F Supp 628, 633; see, also, United States v Liberti, 616 F2d 34, 36-38). At least one New York court has also adhered to this view (People v Martinelli, 117 Misc 2d 310, 313, supra).
Thus, all of the articles found during this warrant-authorized search — those described in the warrant and those that were not listed, but were seen in plain view — were properly seized. Evidence need not be suppressed because a crime victim, or even another civilian with particular knowledge concerning the items being sought, helps the police execute a valid search warrant by identifying stolen goods or other evidence of a crime. Furthermore, when a person giving such assistance observes in open sight an object not named in the warrant, the rules regarding plain view findings by the police should govern.
*641 THE EMERGENCY EXCEPTION
Since warrantless seizures are presumptively unreasonable, the People bear the burden of proving that Dillabough’s need for his clothing was an emergency that excused the police from obtaining prior judicial approval for the entry and search.
Preliminarily, the emergency exception to the warrant requirements must be distinguished from a closely related, but separate exception, that of exigent circumstances. Although the terms are sometimes used interchangeably (see People v Lenart, 91 AD2d 132), the exigency exception applies when the police are seeking evidence whose removal or destruction is imminent, and there is, accordingly, no time for them to obtain a warrant (People v Farenga, 42 NY2d 1092; People v Vaccaro, 39 NY2d 468). The emergency exception, on the other hand, applies when the purpose of the search is not the gathering of evidence, but the protection and aid of people in distress.
In People v Mitchell (39 NY2d 173,177-178), the Court of Appeals set forth the criteria for determining whether a warrantless entry into a person’s home falls within the emergency exception. The three factors enumerated are: that the police must have reasonable grounds to believe that there is an emergency at hand and an, immediate necessity for their assistance; that the search must not be primarily motivated by an intent to arrest or to seize evidence; and that there is a sound basis to associate the emergency with the area to be searched.
With respect to the first condition, belief that there is an urgent need for police intervention, it is, of course, true that the majority of cases invoking the emergency doctrine are those in which human lives are in jeopardy (People v Mitchell, 39 NY2d 173, supra; People v Gallmon, 19 NY2d 389; People v Lenart, 91 AD2d 132, supra; People v Kelly, 83 AD2d 648). However, an emergency is, by definition, any sudden, unexpected state of affairs that calls for immediate action (Webster’s New World Dictionary, 1972, p 457).
In this case, although Dillabough was not in danger of freezing to death, the need for police action was nonetheless imperative. Dillabough was barefoot, almost naked, *642 cold and uncomfortable. The blanket he had been given was a poor substitute for fitted clothing. All of the clothes that he did possess had been confiscated or left by him in the apartment. Moreover, since Dillabough was far from home and it was early in the morning, no replacement garments were readily available. Under these circumstances, Finnerty’s action in allowing Dillabough to retrieve a few items of clothing was a practical, efficient and rational response to the situation.
The second emergency requirement, that the search be motivated not by an intent to uncover evidence, but by a desire to render assistance, was also met in this case. Police officers are obliged not only to enforce the criminal laws of the State, but to aid people in distress as well. In helping to secure Dillabough’s clothing, Finnerty was acting in this latter capacity. Neither the People’s potential intention to introduce the garments, nor Finnerty’s possible suspicion that the items might have evidentiary value, can obscure the fact that Finnerty’s main purpose in reentering the apartment at that time was the simple, humanitarian one of enabling Dillabough to clothe himself. Indeed, since Finnerty had acceded to the defendants’ request to get their overcoats because of the cold weather, it would be only natural and reasonable and of even more immediacy, for the officer to aid in providing some clothing for Dillabough as well.
It cannot be seriously doubted that the final requirement of the emergency exception — that there exists a reasonable basis to associate the emergency with the area to be searched — was satisfied here. Dillabough had not only directed the officers to the apartment, but he had also identified its occupants as his assailants. Given the brief span of time that had elapsed since the purported crime, such factors afforded Finnerty more than an ample basis to believe that Dillabough’s clothes would be found inside the apartment.
It is clear, then, that Fourth Amendment considerations, though of prime importance, do not require the police to delay giving aid and assistance to those in need. Thus, the officer’s actions in entering the apartment with the *643 victim to find minimal items of his clothing did not violate the Fourth Amendment, and the garments found at that time are admissible in evidence.
In conclusion, neither the warrantless entry to recover pants and a shirt, nor the subsequent warrant-authorized search with the victim’s assistance, was an arbitrary or unreasonable exercise of police power, and no legitimate privacy interests were violated in either instance by the efficient and effective action of the police. Application of the foregoing principles creates no conflict between the practical needs of both the criminal justice system and society on the one hand and warranted constitutional concerns on the other.
Accordingly, and for all of the reasons stated, the motion of each defendant to suppress the items seized is, in all respects, denied.