(January 28, 1988)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GARY P. CHARLIER, Appellant.—Kane, J. P. Appeal from a

judgment of the County Court of Broome County (Coutant, J.), rendered April 26, 1984, upon a verdict convicting defendant of the crime of robbery in the first degree.

The instant case concerns a robbery that occurred at about 8:30 P.M. on October 21, 1983 at a restaurant located in the City of Binghamton, Broome County. Defendant was identified as the perpetrator of the crime and after a jury trial was convicted of robbery in the first degree. He was sentenced as a second felony offender to an indeterminate term of imprisonment of 10 to 20 years.

On this appeal, we deal initially with defendant's contention that the verdict was against the weight of the evidence. At the trial, Joann Monroe, a waitress at the restaurant, testified that on the night in question, she was standing at the take-out counter when defendant entered the restaurant. She greeted him and she saw him go into the men's room. She then saw him emerge and go to the take-out counter where the cash register was located. Monroe testified that she approached him and asked if he needed assistance, to which he replied "yes" and pulled out a gun. She immediately lowered her head because she did not want defendant to know that she could identify him. Defendant left as soon as Monroe gave him the money from the cash register. According to defendant, the three opportunities Monroe had to view the robber were insufficient for her to accurately identify defendant, especially since she testified that she deliberately averted her gaze. However, the jury had ample opportunity to evaluate Monroe's demeanor and assess her credibility as a witness (see, People v Pasko, 115 AD2d 114, 115, lv denied 67 NY2d 887). Monroe was an articulate witness and she positively identified defendant as the culprit. Viewing the evidence in the light most favorable to the People (see, People v Gaito, 98 AD2d 909, 910), we find the verdict supported by the weight of the evidence. Further, we also find it to have been supported by legally sufficient evidence.

We also reject defendant's contention that, at the suppression hearing, County Court improperly ruled that Monroe would be permitted to make an in-court identification of defendant at trial and that the court improperly refused to exclude Monroe's identification of defendant at a lineup inspection. Defendant claims both were tainted by an impermissibly suggestive pretrial photo identification. Although County Court found that a stack photo array conducted on October 25, 1983 was impermissibly suggestive, this did not preclude Monroe from making an in-court identification of defendant as

long as she had an independent basis for making the identification *(see, People v Adams,* 53 NY2d 241, 248). We find that in this case, that requirement was satisfied *(see, Neil v Biggers,* 409 US 188, 199-200). The lighting conditions at the crime scene were excellent and Monroe observed defendant on three separate occasions. At one point, she stood face to face with him and spoke with him. Her description of defendant following the crime was very detailed with only minor variations thereafter. She identified the type of hat he wore and even the brand of jeans he was wearing. County Court properly labeled Monroe as an exceptional witness and its finding that an in-court identification by her would be reliable and untainted by the photo array found to be suggestive was supported by substantial evidence *(see, People v Adams, supra,* at 248, 252). Furthermore, the court's findings were sufficient and supported by the record and there is no basis to disturb its determination that the in-court identification was based on an independent source *(see, People v Dobranski,* 112 AD2d 541, 542, *lv denied* 66 NY2d 614).

Similarly, the lineup was not tainted by the suggestive photo array. Given that defendant's strategy at trial was that Monroe misidentified him, County Court properly ruled pursuant to CPL 60.25 that, should Monroe's identification be challenged at trial, her selection of defendant from the lineup could be used as evidence to support her testimony. Defendant also challenges the lineup itself because all the men in it wore colored shirts except for defendant, who wore a stark white shirt. This is the only error alleged by defendant with respect to the lineup and, as County Court noted: "Obvious care was taken to procure five (5) other subjects markedly similar to coloring, height, build and facial hair to that of the defendant. Each participant was provided with a blue baseball cap to wear. Each wore blue jeans." Therefore, the court properly ruled it admissible. It should also be emphasized that the photograph of the lineup and Monroe's testimony concerning same were admitted without objection at trial.

Next, we find from our review of the record that Monroe's limited participation in the execution of the second search warrant was permissible. Contrary to defendant's contention, civilian assistance in search warrants is not inherently improper *(see, People v Cote,* 124 AD2d 1000, *lv denied* 69 NY2d 745; *People v Boyd,* 123 Misc 2d 634, *affd* 127 AD2d 1013, *lv denied* 69 NY2d 877). Here, the police did not extend the scope of their search beyond that authorized by the warrant, nor did Monroe's presence serve as an impermissible substi-

tute for the warrant's requirement of particularity *(see, People v Boyd, supra,* at 637-638). Further, insofar as we have already found that Monroe had ample time to observe defendant at the time of the robbery, her presence at the search did not prejudice her subsequent identification of defendant at the lineup.

We have reviewed defendant's remaining contentions and find them lacking in merit.

Judgment affirmed. Kane, J. P., Casey, Yesawich, Jr., and Levine, JJ., concur.