■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CERRICK F. DE CAMP, Also Known as KEVIN L. SHEPPARD, Appellant.—Weiss, J. P. Appeal from a judgment of the Supreme Court (Ellison, J.), rendered June 6, 1986 in Tompkins County, upon a verdict convicting defendant of the crimes of sodomy in the first degree (two counts), rape in the first degree (three counts) and attempted rape in the first degree.

Between 8:20 P.M. and 8:30 P.M. on August 17, 1985, a woman was walking in an area known as the "Commons" in the City of Ithaca. A man who called himself Toby approached and walked alongside her for at least two minutes while engaging her in a face-to-face conversation. When they reached De Witt Park, the man grabbed her by the throat, dragged her into a secluded area and repeatedly raped and sodomized her. After binding and gagging her, the assailant left. Glynnis Hart, a passerby, responded to the victim's call and assisted her. The police, who arrived at the scene within minutes, were given a detailed description of the assailant and his clothing by the victim from which they recognized defendant as a man questioned at 5:00 P.M. that day who had identified himself as Kevin Sheppard. Within minutes, defen-

dant was apprehended a few blocks from the park and taken to the police station where he was placed in an interview room containing a one-way mirror. The victim, accompanied by Hart, viewed defendant through the mirror and immediately identified him as her attacker. Hart also recognized defendant, who she said had asked her for a cigarette in the park. The victim was taken to a hospital emergency room where physical evidence from her person was collected in a "rape kit".

Defendant was indicted for two counts of sodomy in the first degree, three counts of rape in the first degree, and one count of attempted rape in the first degree. Following a *Wade* hearing, Supreme Court astutely suppressed the station house identification of defendant as unduly suggestive and violative of the guidelines of the Ithaca Police Department. However, the court found that both women had an independent basis, separate from the station house showup, to identify defendant and permitted in-court trial testimony in which the victim and Hart did identify defendant. In addition, the laboratory report and forensic evidence of blood, semen and hair, all contained in the rape kit, was admitted into evidence over defendant's objection. Defendant was convicted on all counts and this appeal ensued.

Defendant first argues that the in-court identification was tainted by the impermissibly suggestive police station showup. We disagree. The inadmissible station house showup did not preclude an in-court identification of defendant so long as the victim and Hart had an independent basis for making that identification *(see, People v Adams,* 53 NY2d 241, 251; *People v Charlier,* 136 AD2d 862; *People v Dobranski,* 112 AD2d 541, 542, *lv denied* 66 NY2d 614). The victim walked and conversed with defendant for several minutes prior to the attack, during which interval it was still light out and she was wearing her glasses. The ensuing attack lasted approximately one hour, giving the victim ample opportunity to view her assailant. Hart also observed defendant's face in a lighted area of De Witt Park when defendant asked her for a cigarette. In our view, the People clearly established an independent basis for the in-court identification of defendant by both witnesses *(see, People v Albert J.,* 138 AD2d 773; *People v Charlier, supra,* at 863-864; *People v Ferkins,* 116 AD2d 760, 763-764, *lv denied* 67 NY2d 942; *People v Dobranski, supra).*

Defendant further maintains that the evidence of hair, semen and blood derived from the "rape kit" test was improperly admitted into evidence because the items were not con-

nected to defendant in any meaningful way. The admissibility of such evidence necessarily depends on "an evaluation of how close is the connection between the object and the defendant" *(People v Mirenda,* 23 NY2d 439, 453; *see, People v Demming,* 116 AD2d 886, *lv denied* 67 NY2d 941). While we agree that the connective evidence was inadequate, we find that the error in admitting the test results was essentially harmless *(see, People v Crimmins,* 36 NY2d 230). There was overwhelming proof of guilt in this case as to both identification and the perpetration of the crimes charged *(see, People v Butler,* 132 AD2d 771, 772, *lv denied* 70 NY2d 873). The victim's explicit testimony was substantiated by Hart, who, only moments after observing defendant in the park, discovered the victim naked, bound and partially gagged, in a hysterical condition. The responding police officer further described the victim as "crying, very upset, almost hysterical". We perceive little probability that the jury would have acquitted defendant but for this error, which was not of constitutional dimension *(see, People v Brown,* 115 AD2d 610, *lv denied* 67 NY2d 940).

Finally, Supreme Court did not err in allowing testimony as to defendant's use of an alias even though the People failed to provide prior notice of intent to use this evidence at trial *(see, People v Berkowitz,* 50 NY2d 333, 338, n 1; *People v Miller,* 123 AD2d 721).

Judgment affirmed. Weiss, J. P., Yesawich, Jr., Levine and Harvey, JJ., concur.