People v Ward (2020 NY Slip Op 02943)





People v Ward


2020 NY Slip Op 02943


Decided on May 20, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 20, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
SHERI S. ROMAN
ROBERT J. MILLER
VALERIE BRATHWAITE NELSON, JJ.


2018-04907
 (Ind. No. 17-00325)

[*1]The People of the State of New York, respondent,
v
Jmin Ward, appellant.
 



DECISION & ORDER ON MOTION
Motion by the appellant for leave to reargue an appeal from a judgment of the County Court, Orange County, rendered March 5, 2018, which was determined by decision and order of this Court dated October 23, 2019.
Upon the papers filed in support of the motion and the papers filed in opposition thereto, it is
ORDERED that the motion is granted and, upon reargument, the decision and order of this Court dated October 23, 2019 (People v Ward, 176 AD3d 1117), is recalled and vacated, and the following decision and order is substituted therefor:
Samuel S. Coe, New City, NY, for appellant, and appellant pro se.
David M. Hoovler, District Attorney, Middletown, NY (William C. Ghee of counsel), for respondent.
Appeal by the defendant from a judgment of the County Court, Orange County (Craig Stephen Brown, J.), rendered March 5, 2018, convicting him of criminal possession of a controlled substance in the first degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of those branches of the defendant's omnibus motion which were to suppress physical evidence and a statement he made to law enforcement officials.
ORDERED that the judgment is affirmed.
The defendant was charged with, among other crimes, criminal possession of a controlled substance in the first degree. By omnibus motion, the defendant moved, inter alia, to suppress physical evidence that was recovered from his residence during the execution of a search warrant. The defendant also moved to suppress a statement that he made to law enforcement officials during the search of his residence.
The County Court, after conducting a hearing, denied those branches of the defendant's omnibus motion which were to suppress the physical evidence recovered from his residence and the statement he made to law enforcement officials. The defendant subsequently entered into a plea agreement pursuant to which he pleaded guilty to one count of criminal possession of a controlled substance in the first degree. On appeal, the defendant contends that the [*2]court should have granted those branches of his omnibus motion which were to suppress the physical evidence and the statement he made to law enforcement officials. We disagree, and affirm the judgment.
The defendant argues that the search warrant was invalid on its face because it was addressed, in part, to members of the Orange County Sheriff's Office Special Operations Group (hereinafter the Special Operations Group), which group includes both police officers and corrections officers. The defendant contends that corrections officers are not authorized to execute search warrants and that their participation in the execution of the search warrant at issue here requires the suppression of the physical evidence that was seized during that search.
As relevant here, "[a] search warrant is a court order and process directing a police officer to conduct . . . a search of designated premises . . . for the purpose of seizing designated property or kinds of property" (CPL 690.05[2][a]). Under the circumstances prescribed in article 690 of the Criminal Procedure Law, "a local criminal court may, upon application of a police officer, a district attorney or other public servant acting in the course of his [or her] official duties, issue a search warrant" (CPL 690.05[1]).
"A search warrant must be addressed to a police officer whose geographical area of employment embraces or is embraced or partially embraced by the county of issuance" (CPL 690.25[1]). "The warrant need not be addressed to a specific police officer but may be addressed to any police officer of a designated classification, or to any police officer of any classification employed or having general jurisdiction to act as a police officer in the county" (id.). The search warrant must contain "[t]he name, department or classification of the police officer to whom it is addressed" (CPL 690.45[3]). "Police officer" is defined in CPL 1.20[34], and includes "[a] sworn member of the division of state police" (CPL 1.20[34][a]), and "[a] sworn officer of an authorized police department or force of a city, town, village or police district" (CPL 1.20[34][d]). A corrections officer is not a police officer, and is instead defined as a peace officer (see CPL 2.10[25]).
As relevant here, "[a] police officer to whom a search warrant is addressed . . . may execute it pursuant to its terms anywhere in the county of issuance" (CPL 690.25[2]). Criminal Procedure Law section 690.50 sets forth certain limitations on the means by which "a police officer" may properly execute a search warrant. As relevant here, under certain circumstances, a "police officer" "may forcibly enter" the premises described in the search warrant (CPL 690.50[1]).
Here, the search warrant authorizing the search of the defendant's residence was issued on April 18, 2017. The search warrant was addressed to police officers of the City of Middletown Police Department, police officers of the New York State Police, and "any member of the Orange County Sheriff's Office Special Operations Group." The evidence at the suppression hearing demonstrated that the Special Operations Group included both police officers and corrections officers. The evidence further showed that in the early morning hours of April 20, 2017, the Special Operations Group entered the defendant's house in Middletown, and secured the interior of the house. After approximately five minutes, the Special Operations Group exited the house, and turned the scene over to Middletown police officers to conduct the search of the residence. During the course of the search, Middletown police officers discovered cocaine, marijuana, drug packing materials, and a quantity of United States currency. The testimony at the hearing established that the role of the Special Operations Group was limited to securing the residence for the safety of the City of Middletown Police Department, which did not have an entry team of its own.
There is no dispute that the search warrant was properly addressed to police officers of the City of Middletown Police Department and police officers of the New York State Police (see CPL 1.20[34][a], [d]). Accordingly, the search warrant complied with the statutory requirement that it "be addressed to a police officer whose geographical area of employment embraces or is embraced or partially embraced by the county of issuance" (CPL 690.25[1]).
The defendant is correct that the search warrant was improperly addressed to the [*3]Special Operations Group, since it includes members who are not police officers within the meaning of the statute (see CPL 690.25[1]; see also CPL 2.10[25]). However, "[s]earch warrants should be tested in a commonsense and realistic manner with minor omissions and inaccuracies not affecting an otherwise valid warrant" (People v Davis, 93 AD2d 970, 971; see People v Parliman, 56 AD2d 966, 967). Indeed, the fact that a search warrant is partially but not wholly invalid does not necessarily require suppression of the evidence that was recovered pursuant to such a warrant (see e.g. People v Brown, 96 NY2d 80, 85-86; People v Allen, 101 AD3d 1491, 1492). Under the circumstances of this case, including the fact that the search warrant here was otherwise properly addressed to sworn police officers in conformity with CPL 690.25(1), the additional inclusion of the members of the Special Operation Group who were not police officers was "analogous to a clerical omission which did not invalidate the warrant" (People v Davis, 93 AD2d at 971; see People v Martin, 163 AD2d 536, 537; see also People v Brown, 96 NY2d at 85-86; People v Allen, 101 AD3d at 1492).
Furthermore, under the circumstances of this case, we conclude that the participation by members of the Special Operations Group in the execution of the search warrant did not invalidate the search or otherwise require suppression of the physical evidence at issue. Although the Criminal Procedure Law only authorizes "[a] police officer" to execute a search warrant (CPL 690.25[2]; cf. 18 USCA § 3105), the participation by an individual who does not meet this statutory definition "is not inherently improper" (People v Charlier, 136 AD2d 862, 864-865). Indeed, courts have upheld the validity of a search where civilians participated in the execution of a search warrant (see id. at 864-865; People v Cote, 124 AD2d 1000, 1001; People v Boyd, 123 Misc 2d 634, 638-639 [Sup Ct, NY County], affd 127 AD2d 1013). Under such circumstances, "civilians who act at the behest of the State are treated as police agents, subject to the same controls and restrictions of the Fourth Amendment as the police themselves" (People v Boyd, 123 Misc 2d at 639; see generally People v Esposito, 37 NY2d 156, 160).
Here, the record of the suppression hearing demonstrates that the Special Operations Group played a limited role in the execution of the warrant. Members of that group merely secured entry to the residence for the benefit of the police officers who actually conducted the search and recovered the physical evidence at issue. There is no indication in the record that the police officers who effected the search and seizure of the physical evidence were acting as agents of the Special Operations Group (cf. Matter of B. T. Prods. v Barr, 44 NY2d 226, 234-235). Nor is there any allegation that the Special Operations Group performed any act that the police officers could not themselves have properly undertaken (see People v Martin, 163 AD2d at 537-538). Accordingly, the limited participation of the Special Operations Group "constituted no greater intrusion on defendant['s] privacy than that which had already been authorized by the issuance of the warrant" (People v Boyd, 123 Misc 2d at 639; cf. Matter of B. T. Prods. v Barr, 44 NY2d at 234-235). Under the circumstances, we agree with the County Court's denial of that branch of the defendant's omnibus motion which was to suppress physical evidence.
We also agree with the County Court's denial of that branch of the defendant's omnibus motion which was to suppress the statement he made to law enforcement officials during the search of his residence. The record of the suppression hearing demonstrates that the defendant's inculpatory statement was spontaneous and "[was] not triggered by any police questioning or other conduct which reasonably could have been expected to elicit a declaration from him" (People v Barley, 82 AD3d 996, 996 [internal quotation marks omitted]; see People v Wallace, 128 AD3d 866, 866; People v Henderson, 57 AD3d 562, 564-565; cf. People v Paulman, 5 NY3d 122, 129; People v Ferro, 63 NY2d 316, 322).
The defendant's remaining contentions, including those raised in his pro se supplemental brief, are without merit or have been rendered academic in light of our determination.
RIVERA, J.P., ROMAN, MILLER and BRATHWAITE NELSON, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court