OPINION of the court
Irving M. Kramer, J.
The defendants Vincent Martinelli and Robert Martinelli, charged with the crimes of criminal possession of stolen property, an E felony (10 counts), and failure to maintain records required to be kept, pursuant to section 415-a of the Vehicle and Traffic Law, an A misdemeanor (30 counts), move this court to suppress evidence seized on the ground that such evidence was obtained as the product of an improper and illegal search conducted by the police in violation of their “Fourth Amendment rights”.
THE ISSUE
The issue in this case is, as this court views it, twofold — whether under the totality of all of the facts and circumstances of this case, the conduct of the police in seizing the evidence (stolen auto parts not specified in the warrant) *311 can be justified under (a) the authority conferred upon the police in the lawful execution of a validly issued but narrowly limited search warrant and/or (b) the exercise by the police of their statutory authority to inspect the records and inventory of the defendants’ automobile dismantling yard pursuant to subdivision 5 of section 415-a of the Vehicle and Traffic Law as then in effect, and whether these two authorities are mutually exclusive or may be exercised contemporaneously.
HEARING
A hearing was conducted before me on June 17, 18, 22, 23 and 25, 1982. The People presented three witnesses — Police Officer Harry Brady, Police Sergeant Karl Bergstrom and Police Officer James O’Connor. The defendants offered no witnesses.
In weighing testimony, a fact finder is not required to credit or discredit a fact simply because testified to by one or several witnesses. The inherent probability or improbability of the facts testified to is to be tested by the totality of the circumstances surrounding the occurrence. The believability and credibility of a witness depends not only upon his demeanor but also on the over-all evaluation of his testimony, its consistency and the manner in which it hangs together with all the evidence in the case. This does not mean that the testimony of each witness must be identical, free from inconsistencies and disparities. It is sufficient if the totality of the testimony is believable and credible. While there were some disparities and inconsistencies in the testimony on this hearing, nevertheless, on the whole, I find the testimony of the police officers to be believable and credible.
FINDINGS OF FACT
The defendants appear to be the principals or the persons in charge of the operations of J & B Auto Salvage, an automobile dismantling business, operated pursuant to section 415-a of the Vehicle and Traffic Law.
Based upon a police investigation and information obtained from one, Adrian Cesaire, that on May 13, 1980 he had purchased the chassis of a 1973 Chevrolet Bel-Air station wagon automobile (without engine or transmis *312 sion) from J & B Auto Salvage, which chassis police investigation confirmed to be a portion of a vehicle reported stolen on May 12, 1980, police officers of the New York City Police Department “Auto Crime Division” on May 19, 1980 visited the premises of J & B Auto Salvage.
Upon arrival at said premises, at approximately 2:15 p.m. of that day, Police Officer Harry Brady requested to see the vehicle dismantler’s book (commonly and hereinafter referred to as the Police Book), which all vehicle dismantles are required to maintain, pursuant to section 415-a of the Vehicle and Traffic Law showing the source of all vehicles and parts on their premises as well as the disposition thereof. Said Police Book is subject to police inspection and verification at any time without prior announcement during regular business hours.[1]
In this case, Police Officer Brady was looking to see if an entry for the 1973 Bel-Air Chevrolet station wagon bearing vehicle identification number VIN No. 1K35H3T235652 had been made in the Police Book. Finding no entry and aware the chassis for such vehicle came from defendants’ premises, Police Officer Brady left to obtain a search warrant leaving several officers behind to partially secure the premises. Some business was permitted but it was conceded that the police officers would not have permitted the sale and removal of certain parts, such as engines or transmissions, which were the particular object of their inspection with respect to the reportedly stolen Bel-Air station wagon.
Police Officer Brady returned to the defendants’ salvage yard at approximately 6:00 p.m. with a duly executed search warrant authorizing a search of the premises for a 1973 Bel-Air station wagon engine and transmission bearing VIN No. 1K35H3T235652, vehicle identification num *313 ber plates, and “any other crimes”.[2] The warrant was shown to one Angelo Paolino, a person left in charge of the premises by the defendants who had earlier been arrested by the police on an unrelated charge.
Because of the lateness of the hour, a sketch was made of the premises by Police Officer Brady, or at his direction, noting the area and extent of the search to be made in order to determine the number of police officers and equipment that would be required to carry out the search. A quick inventory indicated there were approximately 200 engines and transmissions in the premises that could be subject to examination. The premises were secured at 8:45 P.M.
On the following day, May 20, 1980, at approximately 8:30 a.m., the search was commenced. The method of search was as follows: a cleaning fluid or solvent was applied to each examined engine and transmission and scraped or wiped clean to remove grease or rust in order to expose the derivative number, which is the shortened portion of the manufacturer’s complete VIN number. This number was first compared with the VIN number identified in the warrant. If the number obtained did. not. compare with the VIN number sought, it was then compared with the Police Book and if not found therein, it was transmitted to the Police Department Auto Crimes Division, who checked it out with the National Auto Theft Bureau, to determine whether that particular vehicle represented by that VIN number had previously been reported stolen. If reported stolen, the engine or transmission was segregated and tagged. In addition to examining engines and transmissions stored throughout the premises, the police inspected the VIN numbers of several whole cars without license plates that were on the premises, including a bulldozer.
The search indicated, from the beginning thereof, numerous violations of subdivision 5 of section 415-a of the Vehicle and Traffic Law in that there were no recordings in the Police Book of several engines and transmissions *314 stored in the premises, some of which, upon check with the National Auto Theft Bureau, proved to be parts from vehicles previously reported stolen.
The search lasted three days due to the inability of the police to get all of the needed equipment to carry out the search and an interruption by a heavy rain which destroyed some tagging of segregated items that had to be reexamined and retagged. The search concluded on May 21, 1980, and the segregated engines and transmissions inventoried, removed and vouchered on May 22, 1980, with the required return on the warrant filed with the court on May 28, 1980. The specific engine and transmission identified in the warrant which were the subject of the search were never located.
CONCLUSIONS OF LAW
The validity of the search warrant is not in issue, it having been previously determined, as a result of two prior applications and a hearing resulting in two decisions, one, dated April 8,1981, by the Honorable William Booth, and the second, dated March 25, 1982, by this court, that the search warrant dated May 19, 1980 had been validly issued.
The basic question in the instant application is whether the search warrant had been properly executed by the police so that the over-all inspection and search by the police was conducted in a manner legally consonant with defendants’ “Fourth Amendment rights”.
It is the defendants’ contention that although the police officers may have had the right to examine all of the engines and transmissions at the defendants’ place of business for comparison with the engine and transmission number identified in the search warrant, they did not have the right or authorization to make a record of the VIN numbers of these items for comparison with the Police Book and with the police and National Auto Theft Bureau computers to ascertain if they were reported stolen. The defendants, in effect, argue that the police were limited to the four corners of the search warrant , restricting them to look only for the single engine and transmission identified therein and that taking of the VIN numbers of all engines *315 and transmissions constituted, in effect, a second warrant-less search for which there can be no justification.
This court does not agree and is of the opinion that the police conduct was legal and the evidence properly seized under the “Plain View” doctrine enunciated in Coolidge v New Hampshire (403 US 443), in combination with the additional authority conferred upon them by subdivision 5 of section 415-a of the Vehicle and Traffic Law of the State of New York.
The “Plain View” doctrine as enunciated in Coolidge (supra), permits, during the execution of a search warrant, the seizure of items other than those enumerated in the warrant itself providing the police action meets three criteria. The first criterion is that the initial intrusion, which enables the police officer to view the items in question, is lawful; the second that the discovery is inadvertent; and the third that the incriminating nature of the evidence seized is immediately apparent.
In assessing the police action in the case at bar to determine whether it came under the “Plain View” exception of Coolidge (supra), we must also examine all the options available to the police from the moment of their arrival at the defendants’ premises until the search was completed, and that includes not only the validly issued search warrant but also the authorization of the police to make an inspection pursuant to section 415-a of the Vehicle and Traffic Law.
Subdivision 5 of section 415-a of the Vehicle and Traffic Law provides for record keeping and inspection and reads as follows: “5. Records. Any records required by this section shall apply only to vehicles or parts of vehicles for which a certificate of title has been issued by the commissioner or which would be eligible to have such a certificate of title issued. Every registrant shall maintain a record of all motor vehicles, trailers, or major component parts thereof, coming into his possession together with a record of the disposition of any such motor vehicle, trailer or parts thereof. Such record shall be maintained in a manner prescribed by the commissioner. In addition, a registrant *316 shall maintain proof of ownership for any motor vehicle, trailer or major component parts thereof while in his possession. Such records shall be made immediately available upon request during usual business hours, to any employee designated by the commissioner and to any police officer. The failure to produce such records as required by this subdivision shall be a class A misdemeanor.”[3]
The defendants argue that once the warrant was obtained the search was limited and that “§ 415-a” was no longer applicable; and that even assuming it were applicable, the search would still be limited only to an inspection of the Police Book but not the inventory on the premises, and could only be made during regular business hours without disruption of the defendant’s business as was provided in the statute in effect on May 19, 1980.
This argument is specious and pure sophistry. To say that the police in their effort to combat crime and enforce the law must be limited to choices between two legal avenues available to them (in this case the “warrant” versus Vehicle and Traffic Law, § 415-a) is to place an irrational restraint upon the police. I know of no principle or rule of law that places such a limitation upon law enforcement agencies.
It is equally implausible to say that the police could inspect the Police Book but could not examine the inventory required to be listed therein. As was pointed out in People v Tinneny (99 Misc 2d 962, 970) in a well-reasoned decision by Mr. Justice Golden, “[wjithout the ability to substantiate compliance by visual examination of the defendant’s inventory, the intent of the statute requiring the keeping of * * * records would be frustrated if not rendered nugatory.” Although not specifically stated in the statute that court found and this court agrees that the authority to physically inspect and examine the records and inventory *317 contained on the premises was impliedly present in the statute (People v Tinneny, supra).[4]
In the opinion of this court, CPL article 690 (search warrants) and section 415-a of the Vehicle and Traffic Law (inspection of vehicle dismantlers) are not mutually exclusive. One or the other or both investigatory tools could be employed by the police, either singly or simultaneously, as available law enforcement measures so long as there was compliance with the requirements of each statute, and, in the performance of the search or inspection authorized thereby, the defendants’ constitutional rights were not violated.
Returning now to the “Plain View” doctrine and its applicability to this case, I find that the activities of the police officers meet all three criteria required by Coolidge v New Hampshire (403 US 443, supra).
The first criterion is a lawful intrusion. The police in this case were lawfully upon the defendants’ premises pursuant to a lawfully issued warrant.[5]
The second criterion that the discovery be inadvertent is also evident since the police had no prior knowledge of the existence of other stolen engines or transmissions upon the subject premises. They were only discovered to be stolen items after a check of the VIN numbers, taken from said engines and transmissions, was made first against the Police Book and then with the National Auto Theft Bureau’s computer which revealed they were components of previously reported stolen vehicles.[6] The fact that the police might have suspicion, or even an expectation that discovery of other items might occur, does not preclude the application of the “Plain View” doctrine. For the police to *318 be charged with advance knowledge, it must be shown that they had probable cause to believe that the items would be found on the subject premises, knew in advance the location of the evidence sought, and intended to seize it (see United States v Hare, 589 F2d 1291, 1293-1296, and the cases cited therein; United States v Bolts, 558 F2d 316, 320, cert den sub nom. Hicks v United States, 434 US 930; United States v Liberti, 616 F2d 34). Further, as pointed out in United States v Liberti (supra, p 38), “The ‘inadvertence’ qualification has no application to stolen goods” (see Coolidge v New Hampshire, supra, p 471).
. The third criterion, and the most troublesome for this court, is that the nature of the incriminating evidence becomes “immediately apparent”. The troublesome aspect is what was meant by the Coolidge court when it used the phrase “immediately apparent”. Coolidge {supra), unfortunately did not provide a precise definition of “immediately apparent”.
In United States v Shire (586 F2d 15), the court interprets the phrase “immediately apparent”, at page 19: “We do not interpret the ‘immediately apparent’, requirement to connote apparent at first glance, but rather, apparent without other information than that which the officers * * * possessed before their search was over.” (See, also, United States v Thomas, 676 F2d 239.)
This court is in agreement with the interpretation. Applying it to the case at bar it is evident that the incriminating nature of the engines and transmissions seized were not previously known nor were they apparent at first glance to the police when they first lawfully entered the premises although they were aware that the chassis of a stolen automobile had come from these premises. It was only when they made the statutorily authorized inspection (Vehicle and Traffic Law, § 415-a, subd 5), contemporaneously with the search for the specific engine and transmission described in the warrant, did they discover that the engines and transmissions observed were not recorded in the Police Book as required by the statute (which by itself was a crime) and therefore proceeded to further check with the National Auto Theft Bureau to ascertain if they came from previously reported stolen vehicles. The criminal *319 nature of the evidence therefore became apparent as the inspection (Vehicle and Traffic Law, § 415-a, subd 5) and the search (warrant) progressed. The failure to record the engines and transmissions certainly raised a “ ‘reasonable basis for drawing a connection between the observed objects and the crime which furnished the basis for the search warrant,’ * * * [and] ‘a nexus between the item[s] to be seized and the criminal behavior’ ” under investigation and the possibility and probability of ongoing crimes (see 2 LaFave, Search and Seizure, § 4.11 [b], pp 167-168).
The search pursuant to the warrant in combination with the authority of section 415-a of the Vehicle and Traffic Law was conducted in a manner which did not violate defendants’ “Fourth Amendment rights”.
There is one additional point among others advanced by the defendants in their memorandum of law which requires a comment by this court. The defendants’ claim the search in this case to be unreasonable in that it far exceeded permissible bounds in scope, intensity and duration. This court does not agree. The scope, intensity and duration of a search may depend on many factors — the size of the area to be searched, the type of items to be examined, the conditions prevailing at the time of the search, and if or when the purposes of the search are completed, i.e., the object sought is found. (2 LaFave, Search and Seizure, § 4.10 [a], [d].)
Since the warrant itself unquestionably meets the constitutional requirement of particularity[7] we must examine the descriptions provided since that becomes highly relevant in determining the permissible scope and intensity of the search to be undertaken; a search is limited or extended by the warrant’s descriptions.
Here the warrant authorized the “search of premises located at 9424 Ditmas Avenue, Brooklyn, doing business as J&B Auto Salvage, commercial premises, an auto parts yard”. It described the premises by street number and a further description of a commercially operated auto salvage yard. It did not in any way limit the search to any *320 specific portion of the yard. Therefore, to the police executing the warrant, it included the entire premises including the yard and structures where the objects of the search — the engines and transmission and the vehicle identification number plates — could be located, stored or conceivably concealed.
The intensity and duration of the search were dictated by the situation that prevailed and the scenario that developed as the search progressed. Bearing in mind that the objects of the search were never found, that there were approximately 200 engines and transmissions subject to examination, that almost from the very beginning of the search stolen engines and transmissions were found which could only intensify the search, that there were heavy rains which required a redoing of some of the police search efforts, and the police worked beyond normal hours in an effort to complete the search, it cannot be said that intensity or the three-day duration of the search were unreasonable and not within permissible bounds.
This court finds that the items seized were encountered in the course of a lengthy and statutorily authorized search which was reasonably conducted within permissible limits of scope, intensity and duration, and that a sufficient nexus was shown between the criminal behavior under investigation and the items seized, that the police had reasonable cause to believe they were stolen and subject to seizure. The evidence was not obtained as a product of an unreasonable search and seizure and the motion to suppress must be denied.

. It appears that in an inspection and search pursuant to section 415-a of the Vehicle and Traffic Law of automobile components on a vehicle dismantlers’ premises the key means of verification is the manufacturer’s vehicle identification number (VIN number), or a portion thereof (derivative number), which is stamped on the major components of each manufactured automobile which number must be recorded in the Police Book for ultimate comparison with the inventory that is subject to examination.

. This court rejects any claim made by the People regarding the search premised on “any other crime”. This phrase is not supported by the warrant application and is overly broad. It is severed from the warrant (People v Niemczycki, 67 AD2d 442).

. This section was later amended by section 2 of chapter 691 of the Laws of 1979. The amendment took effect September 1, 1980 after the events underlying this motion took place. The amendment now explicitly requires a vehicle dismantler to permit the police upon request (without a warrant) to examine any vehicle or parts of vehicles which are subject to the record-keeping requirements of the statute.

. The amendment of section 415-a of the Vehicle and Traffic Law (see n 3, supra) made explicit what was unquestionably implicit in the prior statute.

. The validity of the warrant was not an issue having been previously determined to have been validly issued (supra).

. It would appear the recording of the VIN numbers by the police, solely for comparison against the Police Book required to be maintained by the defendant pursuant to section 415-a of the Vehicle and Traffic Law, was not a seizure within the meaning of the Fourth Amendment. (See Cotton v United States, 371 F2d 385; United States v Graham, 391 F2d 439; United States v Johnson, 413 F2d 1396; United States v Johnson, 431 F2d 441.)

. Except for the insertion of the phrase “any other crimes” which this court has severed. (See n 2, supra.)