742 P.2d 1363

**STATE of Arizona, Appellee,**

v.

**Randel Steven REASONER, Appellant.**

**No. 1 CA–CR 9766.**

Court of Appeals of Arizona,
Division 1, Department A.

May 12, 1987.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div. and Robert S. Golden, Asst. Atty. Gen., Phoenix, for appellee.

Rosenquist & Crimmins by Anders V. Rosenquist, Phoenix, for appellant.

## OPINION

FROEB, Chief Judge.

Following a jury trial, appellant was convicted of six counts of trafficking in stolen property, five counts of theft, one count each of conducting an illegal enterprise, criminal damage, and altering a vehicle identification number. Although prior convictions were alleged, after a trial of those matters to the court, appellant was acquitted of the allegations. Thereafter, appellant was sentenced to three consecutive ten-year sentences on counts one, two, and three, with the remaining counts running concurrently with either counts two or three.

The charges arose out of appellant's arrest and the execution of a search warrant on March 7, 1984, at his residence located in Phoenix. Police officers on the fugitive detail, who had requested the assistance of two officers from the auto theft detail, proceeded to appellant's residence on that date to arrest appellant on an outstanding arrest warrant from Colorado. During the execution of the arrest warrant, some of the officers viewed truck parts with missing identification numbers which indicated to them the presence of unlawful activity. Based on their observations at the time of assisting in the arrest of appellant, they procured a search warrant, returned to the residence, and seized a number of items of evidence which later led to the convictions which are the subject of this appeal.

Prior to trial, appellant moved to suppress the evidence seized pursuant to the search warrants, claiming that the entry into his residence was unlawful. Appellant and his ex-wife testified at the motion to suppress, and thereafter counsel stipulated that, in lieu of the live testimony of some of the officers who assisted in the execution of the search warrant, the court could consider the transcript of their testimony given at a prior hearing on a motion to suppress by appellant's ex-wife and co-defendant, Velita Jonnie Reasoner aka Nichols. The motion to suppress was then submitted on the basis of the live testimony of both appellant and Velita Reasoner, the transcript of the officer's testimony, the written motion to suppress, and the state's response. The motion was denied.

On appeal, appellant argues:

1. His arrest was without a valid warrant and therefore was illegal, rendering the subsequent search of the residence likewise illegal.

2. Even if there was a valid arrest warrant, the search of appellant's home exceeded the reasonable scope of a search incident to his arrest and was therefore illegal.

3. He was denied effective assistance of counsel in the presentation of the motion to suppress.

4. The trial court abused its discretion in refusing to strike the jury panel, or at least additional individual jurors.

5. The trial court erred in refusing to strike the testimony of the documents examiner.

6. The trial court erred in admitting, over objection to the lack of relevance and foundation, certain critical exhibits.

## ARREST OF APPELLANT AT HIS RESIDENCE

Appellant argues that there was no valid Arizona warrant for his arrest at the time police entered his residence. An officer testified that he had obtained information from Colorado authorities a few days prior to appellant's arrest. The officer testified that he had confirmed the date of appellant's escape and the existence of a valid arrest warrant with the Colorado authorities. He also obtained a picture of appellant and may have received a copy of his conviction record before making the arrest. According to the information received by the officer, appellant had escaped from Colorado prison authorities after conviction for larceny of a motor vehicle. Armed with this information, but without an Arizona arrest warrant, officers from the "fugitive detail" proceeded to appellant's residence.

Appellant answered the door and stepped back into the living room when he saw the police officers. The officers went into the house to arrest appellant. The thrust of appellant's argument is that the Colorado fugitive warrant was not a valid arrest warrant in Arizona, and therefore the officers were not lawfully in his home for purposes of making an arrest. Appellant also notes that warrantless entries, in the absence of exigent circumstances, are proscribed in Arizona. *State v. Bolt,* 142 Ariz. 260, 689 P.2d 519 (1984); *State v. Martin,* 139 Ariz. 466, 679 P.2d 489 (1984).

Our courts have held that if contraband or other evidence is seized during, or obtained as a result of, a warrantless entry of a defendant's home without the presence of exigent circumstances, the seizure is illegal and the evidence must be suppressed as the fruit of the illegal entry. *State v. Cook,* 115 Ariz. 188, 564 P.2d 877 (1977). *See also State v. Ault,* 150 Ariz. 459, 724 P.2d 545 (1986). The fourth amendment of the United States Constitution also proscribes a warrantless entry of a defendant's home to arrest him in the absence of exigent circumstances. *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

The precise question involved in this case is whether the police can enter a home to make an arrest based on their knowledge of an existing felony warrant from another jurisdiction. Based on the dictates of *Payton v. New York,* we hold the warrant requirement is satisfied. The basic rule of *Payton* is that for an in-home arrest to be valid, a neutral magistrate must, through the issuance of a warrant, intervene between the police officer and the citizen. This requirement has been met in the present case.

We agree with the dissenting opinion in *State v. Bradley,* 106 Idaho 358, 679 P.2d 635 (1983), *cert. denied,* 464 U.S. 1041, 104 S.Ct. 705, 79 L.Ed.2d 169 (1985). The majority in *Bradley* held that an Oregon arrest warrant was not sufficient to arrest the defendant in his home in Idaho. However, the dissent argued that no federal constitutional principles were violated simply because the warrant was issued across a state border. *Payton* held that probable cause alone was no longer sufficient authority for police to enter a home to make an arrest. The Court in *Payton* held there must be a warrant. Here, where a warrant for appellant's arrest had been issued in Colorado, the arrest met the prerequisites of *Payton.*

In support of its position, the *Bradley* dissent cited *People v. Woglemuth,* 69 Ill.2d 154, 13 Ill.Dec. 40, 370 N.E.2d 1067, *cert. denied,* 436 U.S. 908, 98 S.Ct. 2243, 56 L.Ed.2d 408 (1977). In *Woglemuth,* the Illinois Supreme Court ruled that a warrant issued in Iowa could be used to make a valid in-home arrest in Illinois. Although

Illinois had a statute that specifically authorized police to make arrests on warrants from other jurisdictions, some of the principles ennunciated in *Woglemuth* are applicable to the present case. The *Woglemuth* court explained that:

> The warrant requirement of the fourth amendment is not frustrated in this case by the distinctive fact that the arrest warrant was issued in a state other than that in which it was executed. Whether a valid foreign warrant is effective in Illinois is a matter of state, not constitutional, law. A suspect's constitutional right to have a neutral magistrate determine whether probable cause exists for his arrest is not undermined by Illinois' choice to extend comity to the determination of a magistrate from another state.

69 Ill.2d at 161, 370 N.E.2d at 1070. Likewise, our decision to extend comity to the decision of a Colorado magistrate in this case does not frustrate the constitutional requirements of *Payton* or the fourth amendment.

■ Appellant argues that the Uniform Criminal Extradition Act, A.R.S. §§ 13–3841 to –3874, is the sole mechanism for implementing a Colorado warrant in Arizona. This may be correct as far as the procedures for extraditing appellant to Colorado are concerned, but that is not the question before us. The extradition statutes set forth the procedures for returning an individual charged with a crime from the forum state to the demanding state; the statutes do not address the issue of whether the existence of the out-of-state warrant will justify the entry of an Arizona home without an Arizona warrant in order to make an arrest. At the time of appellant's arrest, Colorado had not made a demand on the governor of Arizona for appellant's return. Thus, the Extradition Act had not been triggered. Compliance with the extradition statutes is not required to give the Colorado arrest warrant the extraterritorial effect of satisfying the fourth amendment in Arizona. We have earlier held that the Colorado warrant, in and of itself, was sufficient to justify entry into appellant's home to effectuate his arrest.

In sum, appellant's arrest in his home was valid based upon the Colorado fugitive warrant. The Colorado warrant was effective because it met the requirements of *Payton;* a neutral magistrate intervened between the citizen and the police. Additionally, the arrest was not controlled by extradition procedures which had not been invoked. Therefore, the subsequent search of appellant's home was legal, and the evidence gathered as a result of that search was properly admitted into evidence.

## THE SEARCH OF APPELLANT'S RESIDENCE AT THE TIME OF HIS ARREST

■ Appellant argues that one of the officers who assisted in his arrest engaged in a general search of his backyard. During this alleged general search, the officer viewed truck parts with missing identification numbers. The officer testified he went to appellant's home with the "fugitive detail," without suspecting appellant's involvement in any illegal activity, and was only in the backyard to ensure the safety of the arresting officers and to prevent escape. However, appellant argues the officer's testimony was patently false because the officer had been contacted by the fugitive detail to assist them as a result of the officer's expertise involving motor vehicle thefts. Appellant concludes that the officer's presence at his home to assist in the arrest was:

> [A] sham and pretense to start with, and since his activities in the backyard—inspecting pickup doors for missing stickers—had nothing to do with assisting in the arrest, his search was illegal, and the evidence seized on the basis of the warrant which resulted from that illegal search should have been suppressed.

Appellant correctly notes that, "The right to enter for one purpose is not enlarged to allow a general rummaging through a person's effects, however suspicious they may appear to the entering officer." *State v. Hicks,* 146 Ariz. 533, 534, 707 P.2d 331, 332 (App.1985), *cert. granted,* 475 U.S. 1107, 106 S.Ct. 1512, 89 L.Ed.2d 912 (1986). However, when a warrant

places a police officer in a position where he has lawful authority to be, the inadvertent viewing of items subject to seizure allows the officer to seize them. *State v. Kelly*, 130 Ariz. 375, 378, 636 P.2d 153, 156 (App.1981). It is undisputed that the police officers, at the time they executed the fugitive warrant, did not have sufficient knowledge to rise to the level of probable cause to obtain a warrant to search for stolen automobile parts. The testimony at the hearing on the motion to suppress showed that the officers met to plan the execution of the arrest prior to proceeding to appellant's residence. The supervising officer testified that when he learned that a truck with Colorado temporary plates, previously observed at the residence, was no longer there, he told the two officers from the auto theft detail that they did not need to go along on the arrest. However, the officer also testified that there were only four police officers available for the arrest and that the two officers from the auto theft detail decided to go along to assist in the arrest for the safety of the other officers. While securing the back of the house to prevent an escape, one of the officers from the auto theft detail observed truck doors that were in plain view and had missing manufacturer's identification number plates. He also observed what he referred to as a "chopped-up" cab of a truck.

■ The fact that the officers may have had some expectation that they would discover objects possibly related to criminal activity in plain view does not defeat the application of the plain view doctrine. *State v. Superior Court*, 136 Ariz. 78, 82, 664 P.2d 228, 232 (App.1983); *see also People v. Martinelli*, 117 Misc.2d 310, 317, 458 N.Y.S.2d 785, 790 (N.Y.Sup.Ct.1982) ("The fact that the police might have suspicion, or even an expectation that discovery of other items might occur, does not preclude the application of the 'Plain View' doctrine.") The seizure of stolen property which is in plain view during the initial survey of a residence does not render the search or seizure invalid. *State v. Fisher*, 141 Ariz. 227, 686 P.2d 750, *cert. denied*, 469 U.S. 1066, 105 S.Ct. 548, 83 L.Ed.2d 436 (1984). In this case, we find it of no mo-

ment that officers from the auto theft detail assisted in the execution of the warrant. *See State v. Superior Court*, 136 Ariz. at 82, 664 P.2d at 232. *See also United States v. Wright*, 667 F.2d 793, 797 (9th Cir.1982) (where an officer is present and acting in execution of the warrant as directed by another officer, it cannot be said that his presence is unauthorized or unlawful).

■ We conclude that the trial court did not abuse its discretion in determining that the officer was properly on the premises to assist in the execution of the arrest warrant. While on the premises for that purpose, he inadvertently came across evidence which in his experience clearly indicated to him that someone on the premises had committed a felony by removing manufacturer identification numbers. The officer properly included this information in a request for a later search warrant which was then executed at appellant's property.

## EFFECTIVE ASSISTANCE
## OF COUNSEL

■ Alternatively, appellant argues that he was denied effective assistance of counsel in the presentation of his motion to suppress. He argues that counsel should not have submitted the motion to suppress on the transcript of the officers' prior testimony at the motion to suppress brought by his ex-wife. He argues that the submission, without any argument on the motion, rendered counsel a "neutral observer" in the matter in violation of *State v. Carriger*, 132 Ariz. 301, 645 P.2d 816 (1982), and was "tantamount to mute acceptance of an adverse ruling on a critical element of the case." The state notes that appellant failed to allege or show any resulting prejudice due to the claimed shortcoming of counsel. The state also argues the submission was a reasonable trial tactic to save time.

It has recently been stated that,

Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also

prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

*Kimmelman v. Morrison,* 477 U.S. 365, ——, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305, 319 (1986). In *State v. Nash,* 143 Ariz. 392, 399, 694 P.2d 222, 229, *cert. denied,* 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985), the court held that submission of a case is not *per se* ineffective assistance of counsel. The court in *Nash* noted that there were valid tactical reasons in a given case why counsel would want to submit a case on the record. Although *Nash* dealt with submission in the guilt phase, we think the reasoning of that case is equally applicable to the submission of an issue in a motion to suppress. Counsel may well determine that the issue has been properly preserved for appeal and that further repetition of the state's testimony would do little to change the prospects of a favorable ruling.

The facts in support of appellant's motion to suppress were not complicated. They dealt with the issues of whether a valid entry had been made and whether the officers assisting in the arrest went beyond their authority to assist in the arrest and began conducting an unauthorized, warrantless search of appellant's premises. *State v. Hicks.* Furthermore, a defendant has the burden of proving ineffective assistance and must show the specific acts or omissions which he claims were deficient, overcome a strong presumption that the challenged action was trial strategy, and there must be a "reasonable probability that but for [the error] ... the result of the proceeding would have been different." *State v. Gerlaugh,* 144 Ariz. 449, 455, 698 P.2d 694, 700 (1985).

Counsel's decision to submit this motion on the transcripts, with the addition of testimony by his client and ex-wife, does not demonstrate a serious breakdown in the adversarial process such that it undermines our confidence in the actual outcome of the decision. *State v. Gerlaugh,* 144 Ariz. at 455, 698 P.2d at 700. Under these

facts, counsel cannot be said to have acted incompetently by submitting the issue partially on the basis of testimony already given by the police officers involved in the arrest where they were subjected to cross-examination. The facts surrounding the arrest and search issue were not complicated and, with the submission, counsel preserved his right to raise the validity of the arrest and search on appeal. Appellant does not suggest what other evidence might have been introduced or any way in which he was prejudiced by counsel's decision to submit this motion on the transcripts.

## JURY SELECTION

Appellant argues that the trial court erred in refusing to strike the entire jury panel and, subsequently, to excuse several jurors for cause based on comments they made during the *voir dire.* Appellant argues that the court erred in not striking the entire panel after one of the jurors, in response to the court's question, indicated that he knew the prosecutor in the case when the prosecutor had been associated with the F.B.I. The juror indicated that the prosecutor had signed his recommendation to the F.B.I. Academy and that he had a personal appreciation for what the prosecutor, who was then an F.B.I. agent, had done for him. The court excused that juror, but denied a defense motion to strike the entire panel on the basis of the juror's comments about the prosecutor. On appeal, appellant argues that the court abused its discretion in refusing to strike the entire panel, citing *State v. Reynolds,* 11 Ariz.App. 532, 535, 466 P.2d 405, 408 (1970). He argues that the only way the trial court could have ensured appellant's right to a fair trial was to "start over."

The party who challenges the jury panel has the burden of showing that the panel selection was the result of a "material departure from the requirements of law." *State v. Greenawalt,* 128 Ariz. 150, 167, 624 P.2d 828, 845 (1981). In doing so, he must show either that the jury was unlawfully impaneled or that the jurors

could not be fair and impartial. In this case, appellant had the burden of showing that the other jurors were prejudiced by the comments of the juror who had been excused. There is nothing in this record to show that the jurors expressed themselves other than often and freely during the *voir dire* and what appellant asks this court to do is indulge in an assumption that the panel was tainted by the isolated remark expressing appreciation by the excused juror. This we will not do. In other circumstances, similar arguments have been rejected. *State v. Davis*, 137 Ariz. 551, 558, 672 P.2d 480, 487 (App.1983).

■ Next, appellant argues that another juror stated that having cousins in law enforcement would tend to sway him or affect his ability to sit as a fair and impartial juror. Appellant also argues that comments made by two other jurors demonstrated that they could not be impartial. A thorough review of the *voir dire* proceedings shows that each stated he could follow the law presented in court and would base his decisions solely on the evidence and not on any preconceived notions or opinions he might have had about the case or about appellant. The comments made by each of these jurors in response to the trial judge's questions are clearly distinguishable from the facts in *State v. Rodriguez*, 131 Ariz. 400, 641 P.2d 888 (App.1982). In *Rodriguez*, the court concluded that the juror's answers demonstrated that she had serious misgivings about her ability to be impartial because of her recent experiences, which were similar to the offenses for which the defendant was being tried. *Rodriguez*, 131 Ariz. at 401, 641 P.2d at 889.

It is only when a juror's answers demonstrate that he has serious misgivings about his ability to be a fair and impartial juror that he should be struck for cause. *State v. Davis*, 137 Ariz. at 558, 672 P.2d at 487; *State v. Rodriguez*, 131 Ariz. at 402, 641 P.2d at 890. Even though a juror may be concerned about his ability to be fair, when he ultimately assures the court that he can be objective, this will suffice and a trial judge does not err in refusing to strike such a juror for cause. *State v. Davis*.

Because of the trial court's opportunity to observe and listen to potential jurors, and to determine whether they can render a fair and impartial verdict, the trial court's denial of a challenge for cause will not be reversed on appeal absent a clear showing of abuse of discretion. *State v. Rose*, 121 Ariz. 131, 589 P.2d 5 (1978).

Each of the jurors in this case clearly understood his duty to decide this case on the facts and evidence presented at trial and agreed that he could do so. The trial court did not abuse its discretion in denying appellant's motion to strike the jurors for cause.

## REFUSAL TO STRIKE EXPERT'S TESTIMONY

■ During the trial, the state called a documents examiner to testify about the handwriting on four documents submitted into evidence. The state was attempting to prove that a lease seized during the execution of a search warrant at appellant's residence had been signed by him under the name of "Randy Nichols." On appeal, appellant argues that the trial court erred in allowing the documents examiner to testify because there was no foundation for his opinion or for authentication of the documents. Appellant argues that the state provided no foundation to show to whom any of the signatures on the documents belonged. The state argues that both foundation and authentication were present and that the trial court did not err in allowing the documents to be admitted into evidence.

The state's documents examiner, without objection to his qualifications as an expert, testified that the lease for the residence at which appellant was arrested, the title for a Ford truck, and a bill of sale for the truck, obtained during the execution of the search warrant at the residence, were all signed by "Randy Nichols." The expert also testified these signatures were the same. The documents examiner further testified that those three documents were signed by the same person who signed the Arizona driver's license application in Exhibit 17, that also bore the signature of "Randy Nich-

ols." Appellant argues there was no foundation to demonstrate that any of the signatures were his. However, appellant overlooks the fact that Exhibit 32, an Arizona driver's license bearing his picture and the signature of "Randy Nichols" was admitted into evidence and, without objection, was stated to be a copy of Exhibit 17, the driver's license application. In Arizona, the driver's license application is photocopied to make the official license.

Public records may be self-authenticated pursuant to rules 901, 902, Arizona Rules of Evidence. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence which is sufficient to support a finding that the matter in question is what it purports to be. Rule 901, Arizona Rules of Evidence. The comment to rule 901 states that the rule is declaratory of general evidence law and deals only with identification or authentication and not with grounds of admissibility. The motor vehicle records in this case were properly authenticated under the provisions of rules 901, 902, Arizona Rules of Evidence. *See State v. Floyd,* 120 Ariz. 358, 361, 586 P.2d 203, 206 (App. 1978). *See also State v. Corrales,* 135 Ariz. 105, 106, 659 P.2d 658, 659 (App. 1982). In *State v. Norgard,* 6 Ariz.App. 36, 41, 429 P.2d 670, 675 (1967), the court noted that similarity of names was some evidence of identity. In *Norgard,* the court concluded that similarity of names, along with fingerprints and the defendant's picture, made out proof as least strong as in the average criminal case and was sufficient to take the issue of identity to the jury. *Norgard,* 6 Ariz.App. at 42, 429 P.2d at 676. *See also Matter of Appeal in Maricopa County, Juvenile Action No. J–80981–S,* 120 Ariz. 372, 374, 586 P.2d 217, 219 (App.1978).

In this case, it is clear that Exhibit 32, bearing appellant's photograph, was identical to Exhibit 17, the Arizona driver's license application of "Randy Nichols." The jury could have inferred that appellant was using the name Randy Nichols when he obtained his driver's license, and that he also signed the lease, title, and bill of sale for the truck based on the expert witness' testimony that the same person signed all of the documents.

## ADMISSION OF EVIDENCE

■ Appellant argues that the trial court erred in admitting Exhibit 13, the lease for the residence in which he was arrested, seized during the execution of the search warrant. As in the preceding argument, appellant argues that the state did not prove the relevance of the document by showing that it was signed by him. He argues there were no comparisons of the signature of "Randy Nichols" with any known samples of his handwriting. He concludes, therefore, that there was no foundation for admitting Exhibit 13 because there was nothing to connect the document to him or to the issues in the case.

As we noted in discussing the prior issue, the trial court properly found that Exhibit 13 was identified as being in appellant's handwriting by a documents examiner who testified on behalf of the state. Exhibit 32, appellant's driver's license with his signature and photograph, was related to Exhibit 17, the application for the driver's license. The documents examiner testified that all of the signatures in the exhibits were similar. Testimony was offered to show that the lease, Exhibit 13, was seized during the execution of a search warrant and that the document was what the proponent claimed it represented. There was sufficient authentication under rule 901(A), Arizona Rules of Evidence. *State v. Fisher,* 141 Ariz. at 242, 686 P.2d at 765. The relevance of the lease was demonstrated by the expert's testimony relating the signature to the license, Exhibit 32. The trial court did not err in admitting Exhibit 13.

■ Appellant also argues that Exhibits 36 and 37, two latent fingerprints lifted from a fictitious EPA sticker, should not have been admitted because the sticker from which the prints had been lifted had been lost at the time of trial. He further contends that the trial court erred in allowing a fingerprint technician to identify the fingerprints belonging to appellant found

on the lost EPA sticker. The technician utilized Exhibit 29, a photograph of the fictitious sticker from which the prints were lifted, to illustrate his testimony. Prior to trial, the court denied a defense motion to suppress the sticker and the prints taken from it on the grounds that it had been lost while in police custody. The court stated that any harm could be remedied by a *Willits* instruction which was in fact eventually given. *State v. Willits*, 96 Ariz. 184, 393 P.2d 274 (1964).

Appellant argues that the only evidence concerning the EPA sticker was a police officer's testimony about a set of thirty photographs taken at the time of the execution of the search warrant. It is clear that the EPA sticker to which the police officer referred, Exhibit 30, was not the EPA sticker identified in Exhibit 29. The EPA sticker identified in Exhibit 29 was specifically identified by a second officer as the sticker he removed from a vehicle sold to a car dealership by appellant's co-defendant Velita Nichols. The second officer testified that after removing the sticker he placed it in an evidence envelope and submitted it for identification to the laboratory for fingerprint examination. The EPA sticker shown in Exhibit 29 was also contained in the packet of photos admitted in evidence as Exhibit 10. Appellant was shown standing next to the truck with Velita Nichols, depicted in Exhibit 10, who later sold the truck to the car dealership. The officer who removed the sticker properly identified it, and the lab technician who made the fingerprint analysis from it identified Exhibit 29 as the exhibit from which the fingerprints were removed. It is clear that sufficient foundation was demonstrated to permit the admission of the evidence at trial. *State v. Ashelman*, 137 Ariz. 460, 671 P.2d 901 (1983). As noted earlier, a *Willits* instruction was given by the court. Under the facts of this case, that was clearly a sufficient remedy. *State v. Wiley*, 144 Ariz. 525, 537–38, 698 P.2d 1244, 1256–57 (1985).

In reviewing whether a defendant has been denied a fair trial due to the destruction of evidence, the court must look to the circumstances of each particular case. The fingerprints themselves were saved and were available for appellant's use. Under the facts of this case, we find no prejudice.

Affirmed.

CONTRERAS, P.J., and BROOKS, J., concur.