NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

SALVADOR MEDINA, *Appellant*.

No. 1 CA-CR 23-0118
FILED 03-28-2024

Appeal from the Superior Court in Maricopa County
No. CR2019-003621-002
The Honorable David W. Garbarino, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eric K. Knobloch
*Counsel for Appellee*

Maricopa County Legal Defender's Office, Phoenix
By Cynthia Dawn Beck
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Jennifer M. Perkins delivered the decision of the Court, in which Presiding Judge Andrew M. Jacobs and Judge David D. Weinzweig joined.

---

**P E R K I N S**, Judge:

¶1        Salvador Medina appeals his convictions and sentences for two counts of first-degree murder, attempt to commit first-degree murder, and conspiracy to commit first-degree murder. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        We use pseudonyms to protect the privacy of the victims and witnesses. Medina and his father, Sal, purchased what they believed to be a bag of methamphetamine from Gianna. But the bag contained mostly broken fiberglass and only a small amount of methamphetamine. Medina and Sal asked Gianna to meet so they could resolve the issue.

¶3        Medina then began sending threatening text messages to Gianna saying, "I got my army ready for whatever," and "I didn't get all my shooters rounded you for nothing." Gianna thought Medina was "blowing smoke," but she asked her supplier, Joseph, to come with her to the meeting because she was "being threatened."

¶4        Medina, Sal, and Medina's friend, Jeffrey Alvarez, met Gianna and Joseph in the parking lot of Joseph's apartment. Gianna's girlfriend, Nancy, was also at the scene but remained in Gianna's car during the meeting. While Sal and Joseph were arguing about the bad batch of methamphetamine, Gianna saw Medina say something to Alvarez, to which Alvarez responded, "Right here, right now?" Alvarez then pulled out a gun and shot Joseph, Gianna, and Nancy. Joseph and Nancy died from their wounds, but Gianna survived.

¶5        Medina was arrested and charged with two counts of first-degree murder, attempt to commit first-degree murder, conspiracy to commit first-degree murder, and possession of dangerous drugs.

¶6        During jury selection, Medina's counsel objected to Juror 50 because of a response to a multiple-choice question. Juror 50's response

indicated that he assumed "someone did something wrong" because there were murder victims. The superior court overruled the objection but brought Juror 50 to be questioned on his response. Juror 50 explained his response was generalized, that "murder victims imply a murderer," but he did not think Medina was guilty without evidence.

¶7        Medina's counsel then asked Juror 50 if he anticipates the defense to prove anything, or if he would hold it against Medina if he decided not to testify, to which he answered, "not specifically." Medina's counsel further prodded, asking if the state produces evidence and the defense does not, "your inclination is to rule for guilty?" Juror 50 responded "if there is damning evidence, yes." He then clarified that he understood damning evidence to be evidence that "proves [guilt] beyond a reasonable doubt."

¶8        Defense counsel moved to strike Juror 50 for cause based on his answers. But the court denied the motion, finding that the juror had not said anything inconsistent with the concept that the state had to meet its burden of proof for the jurors to find Medina guilty.

¶9        At trial, Medina objected to the admission of body-worn camera footage from the responding officers and security guard. Medina also objected to the admission of graphic crime-scene photographs. The body-worn camera footage was from four different points of view and depicted the scene and witnesses as officers arrived. The videos contained graphic images of the injuries to the victims, and the victims' screams of pain can be heard as the officers gather evidence and administer first aid. The court excluded some of the crime scene photographs but admitted the body-worn camera footage, finding the videos' probative value was not substantially outweighed by the danger of unfair prejudice to Medina. Medina proposed showing the videos on mute so the jury would not hear the victims screaming or choking on blood. But the court found the sounds in the video, including the witnesses' statements, and the officers detailing the location of the victims' firearms, admissible. When presented with the footage, multiple jurors looked away, and two jurors cried.

¶10        After a 14-day trial, the jury found Medina guilty on all counts except possession of dangerous drugs. The court sentenced Medina to two natural life prison terms and one prison term of 28 years, all running consecutively. Medina was also sentenced to life with the possibility of release after 25 years to run concurrently with his first natural life sentence. Medina timely appealed and we have jurisdiction. Ariz. Const. art. VI, § 9; A.R.S. §§ 12-120.21(A)(1), 13-4031, 13-4033(A)(1).

**DISCUSSION**

¶11        Medina argues the court should have struck Juror 50 for cause because he could not or would not follow the law regarding the burden of proof or weighing of evidence. Medina also argues the superior court abused its discretion by admitting the body-worn camera footage.

**I.        The superior court did not err by denying Medina's motion to dismiss Juror 50.**

¶12        We review rulings on strikes of potential jurors for an abuse of discretion, giving deference to the superior court which was able to observe the potential jurors. *State v. Colorado*, 256 Ariz. 97, 103, ¶ 23 (App. 2023).

¶13        A criminal defendant has a constitutional right to be tried by an impartial jury. U.S. Const. amend. VI; Ariz. Const. art. 2, § 24. A court must excuse a prospective juror "if there is a reasonable ground to believe" the juror "cannot render a fair and impartial verdict." Ariz. R. Crim. P. 18.4(b). Accordingly, the court must strike a juror who expresses "serious misgivings about his ability" to be fair and impartial, *State v. Smith*, 182 Ariz. 113, 115 (App. 1995), but need not remove a juror who "ultimately assures the court that he can be objective," *State v. Reasoner*, 154 Ariz. 377, 384 (App. 1987). "In assessing a potential juror's fairness and impartiality, the trial court has the best opportunity to observe prospective jurors and thereby judge the credibility of each." *State v. Hoskins*, 199 Ariz. 127, 139, ¶ 37 (2000). The court must consider the totality of a juror's conduct and answers, and the party challenging a juror for cause "has the burden to establish by a preponderance of the evidence that the juror cannot render a fair and impartial verdict." Ariz. R. Crim. P. 18.5(h).

¶14        Medina claims that Juror 50 "took the position that if the State put on damning evidence[,] he would expect the defendant to put on evidence." Medina argues that "[Juror 50's] unwillingness to follow the law and correctly weigh the evidence should have disqualified him," and, as such, the superior court's failure to strike Juror 50 deprived Medina of the right to a fair and impartial jury.

¶15        But Juror 50 clarified upon questioning outside of the presence of other potential jurors that, to him, "damning evidence" is evidence that proves Medina's guilt beyond a reasonable doubt. This is an unequivocal statement that Juror 50 was able to correctly follow the law. *Hoskins*, 199 Ariz. at 140, ¶ 44 (denying motion to strike a challenged juror who "exhibited an initial, fundamental misapprehension" of burdens of

4

proof because she responded affirmatively to follow-up questioning about understanding the law). Juror 50's answers during jury selection do not establish that he was unable to be fair and impartial. Because the superior court is in the best position to assess the responses and demeanor of prospective jurors, we defer to its finding that Juror 50 was able to render a fair and impartial verdict. *State v. Acuna Valenzuela*, 245 Ariz. 197, 210, ¶ 30 (2018) (deferring to the superior court's assessment that a challenged juror "understood the process sufficiently to serve as a fair and impartial juror"); *Hoskins*, 199 Ariz. at 141, ¶ 48 ("We observe that juror statements and circumstances normally warrant further exploration by the trial court to assure fairness and impartiality. Here, the trial court questioned each juror on matters of individual concern and was satisfied on the question of fairness."). The court did not abuse its discretion.

## II. The superior court did not abuse its discretion by admitting body-worn camera footage.

**¶16** Medina next argues the superior court improperly admitted body-worn camera footage from the responding police officers and security guard. We review the admissibility of video evidence for an abuse of discretion. *State v. Morris*, 215 Ariz. 324, 339, ¶ 69 (2007). We consider "the [video's] relevance, its tendency to inflame the jury, and its probative value compared to its potential to cause unfair prejudice." *Id.* (cleaned up). Medina contends the videos had "so little probative value . . . that admitting even one, let alone all four [videos], could only have been for the purpose of inciting the passions and inflaming the minds of the jurors." He maintains that the videos are not relevant because they do not shed light on any contested issues.

**¶17** We agree with the superior court that the videos have probative value to depict "the location of particular items at the scene . . . [and] the witnesses' state of mind immediately following the events at issue." Medina nonetheless suggests the footage is cumulative because these facts could have been proven by witness testimony. But "[w]hether the subject-matter of a [video] can be described with words is not the test of admissibility." *State v. Goudeau*, 239 Ariz. 421, 459–60, ¶ 157 (2016). And video evidence is relevant, notwithstanding an offer to stipulate, if it helps to illustrate what occurred. *State v. Rienhardt*, 190 Ariz. 579, 584 (1997).

**¶18** Medina points to several cases in which the court excluded graphic evidence to support his contention that the videos' unfair prejudice outweighed any probative value. *See State v. Chapple*, 135 Ariz. 281, 287–88 (1983) (finding color photos of charred body, damaged skull, and exposed

brain matter inadmissible); *State v. Davolt*, 207 Ariz. 191, 208–09, ¶¶ 61, 63 (2004) (finding crime scene photos depicting charred and decomposing bodies inadmissible); *State v. Jones*, 203 Ariz. 1, 10, ¶¶ 30–33 (2002) (finding photos of a minor victim's genital area and anus inadmissible). The evidence at issue here—videos briefly depicting the victims' injuries while responding officers administered first aid—is not so gruesome and shocking as to require its preclusion. *State v. Clabourne*, 142 Ariz. 335, 343 (1984) ("Gruesome photographs may be admitted to . . . aid the jury in understanding testimony."). Video evidence may be admissible, even if supported by other evidence, if it is offered to complement witness testimony. *See Davolt*, 207 Ariz. at 209, ¶¶ 61–62. And in fact, the superior court did exclude some of the proffered crime scene photos after weighing probative value against unfair prejudice.

¶19 The superior court explicitly weighed probative value against the danger of unfair prejudice in admitting the body-worn camera footage as the law requires, and the record supports its findings. The court did not abuse its discretion.

**CONCLUSION**

¶20 We affirm Medina's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:    TM